# IN THE UNITED STATES DISTRICT COURT
## FOR THE SOUTHERN DISTRICT OF ALABAMA
### SOUTHERN DIVISION

| | |
|---|---|
| **LIONEL GUSTAFSON, et al.** | ) |
| | ) |
|     **Plaintiffs,** | ) |
| | ) |
| v. | ) CIVIL ACTION NO. 1:05-cv-00352-CG-L |
| | ) |
| **ADRIAN JOHNS, et al.** | )        **THREE-JUDGE COURT** |
| | ) |
|     **Defendants.** | ) |

## MEMORANDUM IN SUPPORT OF MOTION FOR JUDGMENT ON THE PLEADINGS

Nancy Worley, in her official capacity as Secretary of State of Alabama, a defendant in this action, for herself and on behalf of the 67 Probate Judges who are also named as defendants in their official capacities, submits this Memorandum in support of her Motion for Judgment on the Pleadings. For the reasons stated in the Motion and this Memorandum, this Court should enter judgment in favor of Secretary of State Worley and against the Plaintiffs.

In their Complaint, as amended, the Gustafson Plaintiffs make two primary contentions. First, they complain that the redistricting plans for the Alabama State Senate and State House of Representatives do not comply with constitutional one-person-one-vote standards. Second, they complain that those redistricting plans are the product of political gerrymandering. The political gerrymandering claims are premised on two theories: (1) political gerrymandering violates the Equal Protection Clause of the Fourteenth Amendment to the United States Constitution; and (2) political gerrymandering violates the Gustafson Plaintiffs' First Amendment rights of freedom of speech and of association.

In submitting their Motion and this Memorandum, Secretary of State Worley and the other State Election officials note that the legislative redistricting plans are the product of the Alabama Legislature. As a result, the members of the Legislature are likely to be the most knowledgeable persons when questions about line-drawing are asked. In contrast, these defendants do not know why the lines were drawn the way they were; they simply run elections using the lines that others have established. For those reasons, to the extent that one of more of the other parties to this action may assert that others act from partisan motives, these defendants do not join in such assertions. Even so, they believe that the Gustafson Plaintiffs' claims are due to be dismissed.

## FACTUAL BACKGROUND

Secretary of State Worley attaches the following documents to her Motion and incorporates them by reference:

| Exhibit | Description |
| --- | --- |
| 1 | Letter, August 14, 2001, from John J. Park, Jr. and Charles Campbell to Chief, Voting Section, Civil Rights Division, United States Department of Justice |
| 2 | Letter, September 17, 2001, from John J. Park, Jr. and Charles B. Campbell to Chief, Voting Section, Civil Rights Division, United States Department of Justice |
| 3 | Letter, September 4, 2001, from John J. Park, Jr. and Charles B. Campbell to Chief, Voting Section, Civil Rights Division, United States Department of Justice |
| 4 | Letter, Sept 26, 2001, from John J. Park, Jr. and Charles B. Campbell to Chief, Voting Section, Civil Rights Division, United States Department of Justice |
| 5 | Letter, October 15, 2001, from Ralph F. Boyd, Jr. to John J. Park, Jr. and Charles B. Campbell |

| | |
|---|---|
| 6 | Letter, November 5, 2001, from Ralph F. Boyd, Jr., to John J. Park, Jr., and Charles B. Campbell |
| 7 | Reapportionment Committee Guidelines for Legislative, State Board of Education, and Congressional Redistricting, State of Alabama |
| 8 | Third Amended Complaint for Declaratory, Injunctive, and Other Relief Regarding Redistricting of State Legislative Districts in the State of Alabama, *Montiel v. Davis,* No. 1:01-cv-447-BH-S (S.D. Ala.) |

As discussed below, this Court can consider these materials in ruling on this motion without converting it into a motion for summary judgment governed by Federal Rule of Civil Procedure 56.

In this lawsuit, as amended, nineteen plaintiffs (the "Gustafson Plaintiffs" unless otherwise stated) challenge the redistricting plans for the Alabama State Senate and State House of Representatives. The plaintiffs, each of whom alleges that he or she lives in an overpopulated district, claim that the plans violate constitutional one-person-one-vote standards and are a product of political gerrymandering, premising those claims on the Fourteenth Amendment to the United States Constitution. They also allege that the plans contravene their First Amendment rights to freedom of speech and freedom of association. They seek declaratory and injunctive relief that would have the effect of invalidating the plans in their entirety and requiring the adoption of new redistricting plans. *See* generally No. 9.

This lawsuit is not the first challenge to these plans. In 2002, before the Legislature adopted redistricting plans that reflected the results of the 2000 Census, two groups of plaintiffs filed suit to require the Legislature to reapportion and redistrict itself. While those lawsuits were pending, the Legislature adopted new redistricting plans for the State Senate and State House of Representatives. After the Governor signed the two bills, the plans were submitted to the United

States Department of Justice for preclearance pursuant to Section 5 of the Voting Rights Act of 1965, 42 U.S.C. § 1973.

By letters dated October 15, 2001 and November 5, 2001, respectively, the United States Department of Justice precleared the redistricting plans for State Senate and the State House of Representatives. *See* Exhibits 5 and 6.

Only one of the two groups of plaintiffs, the Montiel Plaintiffs, sought to challenge the precleared plans. In their Third Amended Complaint, a copy of which is attached as Exhibit 8, the Montiel Plaintiffs asserted that the plans were unconstitutional because they violated one-person-one-vote standards and that some of the districts in which they lived were the product of racial gerrymandering. The Montiel Plaintiffs, who were represented by one of the attorneys for the Gustafson Plaintiffs and lived in State Senate Districts 5, 22, 28, and 34 and House Districts 68, 70, 79, 83, and 101, sought certification of a plaintiff class and specified subclasses. Ex. 8, ¶¶ 37-40 at 16-21. They also sought certification of a defendant class of probate judges, naming 24 of them as well as then-Secretary of State Bennett as defendants. The Montiel Plaintiffs sought declaratory relief including a finding that the apportionment of the Senate and House plans was unconstitutional and in violation of Section 2 of the Voting Rights Act of 1965, 42 U.S.C. § 1973. Ex. 8, at 55-58.

In moving for summary judgment in *Montiel v. Davis,* the parties defending the plans put, among other things, the State's initial preclearance letters relating to the redistricting plans and the Guidelines promulgated by the Permanent Joint Legislative Committee on Reapportionment to guide them in the redistricting process before the court. *See* Exhibit 7.

4

In its submission letters for the Senate plan, the State showed that, among other things, both the old plan and the new plan had 8 black-majority districts. Exhibit 1. It also showed that no Senate incumbents were placed in the same district. Exhibit 2.

With respect to the House plan, the State showed that, among other things, both the old plan and the new plan had 27 black-majority districts. Exhibit 3. There was a minimal change in those districts in that, while one of the black-majority districts in the old plan became majority-white, a new black-majority district was created. *Id.* It also showed that Republican incumbents were paired in two districts and two new districts were created.[1] Exhibit 4.

A three-judge court, sitting in this judicial District, ruled in favor of the defenders of the plans and against the Montiel Plaintiffs on cross motions for summary judgment. More specifically, the three-judge court held that an overall population deviation of 9.78% in the Senate plan and 9.93% in the House plan did not violate one-person-one-vote standards absent some evidence that the redistricting process had a taint of arbitrariness or discrimination. Indeed, the court concluded that population deviations less than 10% create a rebuttable presumption of constitutionality, and challengers must show that the deviation in the plan results solely from the promotion of an unconstitutional or irrational state policy. 215 F. Supp. 2d at 1285-86. The court concluded that the Montiel Plaintiffs failed to carry their burden in that they "failed to proffer evidence, either direct or circumstantial, which establishes to any degree that the Alabama Legislature subordinated traditional race-neutral district principles . . . . to racial considerations . . . ." 215 F. Supp. 2d at 1283. Put differently, the Montiel Plaintiffs' allegation

---

[1] The paired Republicans were Johnny Curry and Bobby Humphryes in new HD 15 and Mark Gaines and Allen Sanderson in new HD 46. Humphryes was a plaintiff in *Montiel v. Davis* and a different plaintiff living in HD 15 is a plaintiff in this case as well. On information and belief, Gaines won the election in 2000 and has since been appointed Probate Judge of Jefferson County. Sanderson ran to fill the vacancy created when Bolin was appointed, but lost.

that white-majority districts were systematically overpopulated and black-majority districts systemically underpopulated was not sufficient to show that the plans were drawn with an impermissible racial motive.

### 2. The Standard of Review.

Secretary of State Worley makes her motion pursuant to Federal Rule of Civil Procedure 12(c). With respect to such a motion for judgment on the pleadings, the Eleventh Circuit has held that the courts should:

> Accept[] the facts in the complaint as true and view[] them in the light most favorable to the nonmoving party. *See Ortega v. Christian,* 85 F. 3d 1521, 1524-25 (11th Cir. 1996). "Judgment on the pleadings is appropriate only when the plaintiff can prove no set of facts in support of his claim which would entitle him to relief." *Moore v. Liberty Nat'l Life Ins. Co.,* 267 F. 3d 1209, 1213 (11th Cir. 2001) (internal marks omitted), *cert. denied,* 535 U.S. 1018, 122 S. Ct. 1608, 152 L. Ed 2d 622 (2002).

*Horsley v. Feldt,* 304 F. 3d 1125, 1131 (11th Cir. 2002); *see also Cannon v. City of West Palm Beach,* 250 F. 3d 1299, 1301 (11th Cir. 2001) ("Judgment on the pleadings is appropriate when there are no material facts in dispute and the moving party is entitled to judgment as a matter of law.") In considering the pleadings, this Court should not give deference to any conclusory allegations, *South Florida Water Management Dist. v. Montalvo,* 84 F. 3d 402, 409 fn. 10 (11th Cir. 1996), or to any unsupported conclusions of law or mixed assertions of law and fact. *See Gonzales v. Reno,* 325 F. 3d 1228, 1235 (11th Cir. 2003).

Notwithstanding the focus on the pleadings, however, this Court is not barred from considering matters of public record. In *Bryant v. Avado Brands, Inc.,* 187 F. 3d 1271, 1275-81 (11th Cir. 1999), the Eleventh Circuit held that consideration of documents that had been publicly filed with the Securities Exchange Commission in a securities action at the motion to dismiss stage was not inappropriate. Those documents were capable of judicial notice and were

pertinent to two of the defenses asserted in the motion. The court explained that, while the purpose of prohibiting courts from considering matters outside the pleadings at the motion to dismiss stage was to keep a plaintiff from being caught by surprise, consideration of publicly filed documents is "consonant with common notions of fairness." 187 F. 3d at 1279. It is also consistent with considerations of judicial economy.

In this case, consideration of public documents relating to the redistricting plans and the case of *Montiel v. Davis* in connection with this motion is not inappropriate. This lawsuit is not the first challenge to these plans, and one of the attorneys for the Gustafson Plaintiffs represented the first challengers, who were not successful. Before this Court and the parties expend a substantial effort, this Court should consider the degree to which the earlier litigation precludes this action. In addition, each of these documents is capable of judicial notice.[2] Finally, considering these materials prevents the Gustafson Plaintiffs from asserting facts outside their context.

## ARGUMENT

In this portion of her Memorandum, Secretary of State Worley will address the preclusive effect of the three-judge court's decision in *Montiel v. Davis.* Then, assuming, without conceding, that the Gustafson Plaintiffs' political gerrymandering claim is not precluded, Secretary of State Worley will show that that claim is due to be dismissed. Before doing so, however, Secretary of State Worley will set out some general principles that govern legislative redistricting, showing that some of the legal assertions made by the Gustafson Plaintiffs in their Amended Complaint are incorrect.

### A.   General Considerations

In their Complaint, as amended, the Gustafson Plaintiffs include a number of assertions of law and mixed assertions of law and fact.  On review of a motion to dismiss or for judgment on the pleadings, factual assertions are given deference, but assertions of law are not.  Even so, Secretary of State Worley will respond to some of these assertions so that the baselines for this Court's analysis are clear.

First, the use of an overall population deviation of $\pm$ 5% in a legislative districting plan is not, contrary to the Gustafson Plaintiffs' assertion in ¶ 107 of their Amended Complaint, "in and of itself . . . , whether a starting point or goal, . . . unconstitutional."  Rather, in *Brown v. Thomson,* 462 U.S. 835, 103 S. Ct. 2690 (1983), the United States Supreme Court noted:  "Our decisions have established, as a general matter, that an apportionment plan with a maximum population deviation under 10% falls within this category of minor deviations."  462 U.S. at 842, 103 S. Ct. at 2696 (citing *Connor v. Finch,* 431 U.S. 407, 418, 97 S. Ct. 1828, 1835 (1977); *White v. Regester,* 412 U.S. 755, 764, 93 S. Ct. 2332, 2338 (1973)); *see also Gaffney v. Cummings* 412 U.S. 735, 745, 93 S. Ct. 2321, 2327 (1973).  A three-judge court sitting in this District applied that standard in *Montiel v. Davis* and invoked the Fourth Circuit's decision in *Daly v. Hunt,* 93 F. 3d 1212, 1220 (4th Cir. 1996), to explain the importance of the distinction between plans with an overall deviation less than 10% and those with a greater overall deviation. *See* 215 F. Supp. 2d at 1285-86.  Without necessarily endorsing the use of the *Daly v. Hunt* analysis in this case, it is clear that the Alabama Legislature did not act improperly in using a $\pm$ 5% deviation.

---

[2] To the extent necessary, the State Election Officials request that, pursuant to Federal Rule of Evidence 201, this Court take judicial notice of Exhibits 1-8.

Second, the Gustafson Plaintiffs' invocation of the possibility that plans with a smaller deviation, like the State's Congressional plan, could be drawn, *see* Amended Complaint at 35, ¶ 106, is entitled to no evidentiary weight. First, as noted above, the applicable standard for legislative districts establishes an overall deviation of 10% as de minimis. Congressional plans are constitutionally required to be drawn to precise one-person-one-vote standards. *See, e.g., Karcher v. Daggett,* 462 U.S. 725, 103 S. Ct. 2693 (1983). Thus, the Gustafson Plaintiffs mix apples and oranges. In addition, as the *Montiel v. Davis* court pointed out, "The possibility that a more equipopulous apportionment plan could have been drawn does not, standing alone, establish a one-person-one-vote violation." 215 F. Supp. 2d at 1288 (*citing Daly v. Hunt,* 93 F. 3d at 1221).

### B. The Preclusive Effect of *Montiel v. Davis*

#### 1. Res Judicata Bars The Gustafson Plaintiffs' Claims.

The Eleventh Circuit Court of Appeals has identified four elements of the defense of res judicata:

(1) A prior decision rendered by a court of competent jurisdiction;

(2) A final judgment on the merits;

(3) Identical parties involved in both lawsuits; and

(4) The same causes of action involved in each lawsuit.

*See, e.g., Davila v. Delta Air Lines,* 326 F. 3d 1183, 1187 (11th Cir. 2003); *Jang v. United Techs. Corp.,* 206 F. 3d 1147, 1149 (11th Cir. 2000). In this case, the State Election Officials contend that the decision of the three-judge court in *Montiel v. Davis,* 215 F. Supp. 2d 1279 (11th Cir. 2002) (three-judge court), is entitled to res judicata effect. Plainly, that decision satisfies the first

two elements of res judicata. The three-judge court had jurisdiction over the parties and the claims, and it ruled against the Montiel Plaintiffs on cross-motions for summary judgment.

With respect to the third element, the parties to the original action and those in privity with them are regarded as identical for res judicata purposes. *Larry v. Ansari,* 817 F. 2d 1521, 1523 (11th Cir. 1987). In *NAACP v. Hunt,* 891 F. 2d 1555 (11th Cir. 1990), the Eleventh Circuit held that a prior judgment against one African-American legislator was binding not only on him but also on other African-American legislators. Those legislators challenged the flying of the confederate flag over the State Capitol, and Alvin Holmes' challenge was rejected before he and other legislators who were members of the NAACP filed their challenge. The Eleventh Circuit noted that "[p]rivity exists where the nonparty's interests were represented adequately by the party in the original suit. Privity also exists where a party to the original suit is so closely aligned to a nonparty's interest as to be his personal representative." 891 F. 2d at 1560-61 (internal citations and quotation omitted). The court concluded that Holmes, the original plaintiff, met these tests. Accordingly, the rejection of Holmes' first lawsuit was binding on the NAACP plaintiffs in the second action.

With respect to the fourth element, res judicata bars not only the claims made in the original action, but also any claims that could have been made. *See, e.g, Davila,* 326 F. 3d at 1187 (citing *Trustmark Ins. Co. v. ESLU, Inc.,* 299 F. 3d 1265, 1271 (11th Cir. 2002)). It further applies "not only to the precise legal theory presented in the prior case, but to all legal theories and claims arising out of the same nucleus of operative fact." *NAACP v. Hunt,* 891 F. 2d at 1561.

In *NAACP v. Hunt,* the Eleventh Circuit held that the same wrongful act and the same asserted right were at issue in each case: The plaintiffs all alleged that the flying of the

10

confederate flag above the capitol violated their right to be free of discrimination. The court that, even though the causes of action were "arguabl[y] ... different" in each case, "the rights claimed and the wrongs alleged are almost identical." *Id.* Furthermore, the new legal theories in the second action could have been asserted in the first. Accordingly, res judicata applied.

In *Robertson v. Bartels,* 148 F. Supp. 2d 443 (D.N.J. 2001), *aff'd,* 534 U.S. 1110, 122 S. Ct. 914 (2002), a three-judge district court considered the preclusive effect of a judgment on successive lawsuits in the redistricting context. The court concluded that the second group of plaintiffs could be bound by the denial of relief as to the first group. In particular, the court noted that redistricting involved a public, rather than a private law, issue. It explained that, with a public law issue like redistricting, claim preclusion based on a prior judgment may be appropriate to preclude multiple challenges and discourage "fence-sitting" by plaintiffs. 148 F. Supp. 2d at 450. Indeed, "unless an action is deemed precluded by an earlier judgment, 'nonparties would benefit if the plaintiffs were successful but would not be penalized if the plaintiffs lost.'" *Id.* (quoting *Tyus v. Schoemehl,* 93 F. 3d 449, 456 (8th Cir. 1996)).

All of these considerations apply in this case. Plaintiffs living in SD 22 (Sheldon Day and Billy Ray Dukes, Jr.) and HD 15 (Bobby Humphryes and Pat Ward) and 79 (John Rice and Keith Ward) are present in both cases. Those claims are plainly precluded. As for the remaining Gustafson Plaintiffs, they are included in the putative class action that the Montiel Plaintiffs sought to bring in that they live in overpopulated districts. Both sets of plaintiffs are represented by the same attorney, and both seek relief against the plans in their entirety. Those plans survived one challenge and should not be put to a second challenge that the first challengers could have brought. Otherwise, the Gustafson Plaintiffs will have benefited from sitting on the fence and watching the Montiel plaintiffs fail.

Finally, the Gustafson Plaintiffs assert the same causes of action that the Montiel Plaintiffs did. Both challenges arise out of the same nucleus of operative fact, the Legislature's adoption of new redistricting plans. Both sets of Plaintiffs start with a one-person-one-vote claim. While the Montiel Plaintiffs called the problem racial gerrymandering and the Gustafson Plaintiffs call it political gerrymandering, nothing stopped the Montiel Plaintiffs from asserting a political gerrymandering claim too. Such claims would have been analyzed differently from the way they are due to be analyzed today, but a political gerrymandering claim could still have been made. It would simply have been reviewed under the standard set forth in the plurality opinion in *Davis v. Bandemer,* 478 U.S. 109, 106 S. Ct. 2797 (1986), and its progeny instead of the standard, whatever it may be and assuming there is one, in *Vieth v. Jubelirer,* 541 U.S. 267, 124 S. Ct. 1769 (2004). Indeed, under the plurality opinion in *Davis v. Bandemer,* political gerrymandering claims were justiciable under the Equal Protection Clause, which is one of the bases for the Gustafson Plaintiffs' political gerrymandering claim. Thus, for res judicata purposes, the Gustafson Plaintiffs' claims are the same as the Montiel Plaintiffs' claims.

Measured against these standards, res judicata should be applied to bar the claims of the Gustafson Plaintiffs. It is not unfair to the Gustafson Plaintiffs to conclude that their interests were adequately represented by the Montiel Plaintiffs and to bind them with the judgment against the Montiel Plaintiffs. Furthermore, the claims that the Gustafson Plaintiffs make could have been made by the Montiel Plaintiffs.

### 2. The Gustafson Plaintiffs' One-Person-One-Vote Claim Lacks Merit.

Assuming, without conceding, that res judicata does not bar all of the Gustafson Plaintiffs' claims, the decision in *Montiel v. Davis* bars their one-person-one-vote claim. The three-judge court in *Montiel v. Davis* decided that precise issue, holding that the population

deviations in the redistricting plans did not, in and of themselves, make those plans unconstitutional. The court also decided that there was insufficient evidence that the apportionment process was tainted by arbitrariness or discrimination to rebut the presumption of constitutionality to which the plans were entitled. Before proceeding further with this claim, the Gustafson Plaintiffs should be required to show why these aspects of *Montiel v. Davis* should not be binding as precedent.

Any reliance on the decision of the three-judge court in *Larios v. Cox*, 300 F. Supp. 2d 1320 (N.D. Ga.), aff'd, 124 S. Ct. 2806 (2004), as a basis for distinguishing *Montiel v. Davis* is misplaced. The two decisions are factually distinguishable on several bases. First, *Larios v. Cox* involved review of Georgia's legislative districting plans, which were adopted by entirely different people against an entirely different backdrop. Second, the drafters of the Georgia plans paired an unusual number of Republican incumbents, 37 of 74 in the House compared to only 9 of 105 Democrats, and 10 of 24 Republicans in the Senate compared to only 2 of 32 Democrats. 300 F. Supp. 2d at 1326-27. Even though some of the pairings were in multi-member districts, a disproportionate number of Republican incumbents lost their seats. 300 F. Supp. 2d at 1329-30. In contrast, the Alabama plans paired only 4 Republicans in the House and no one in the Senate. Finally, the two decisions employ the same legal analysis, each deeming an overall population deviation of less than 10% to be de minimis. *See* 300 F. Supp. 2d at 1339-41. The application of the same legal analysis to reach different results shows how fact-bound the decision in *Larios v. Cox* is.

**C.     The Gustafson Plaintiffs' Political Gerrymandering Claims Are Due To Be Dismissed.**

Assuming, without conceding, that the Gustafson Plaintiffs are not barred from bringing their political gerrymandering claim, that claim should be dismissed.

Until *Vieth v. Jubelirer,* 541 U.S. 267, 124 S. Ct. 1769 (2004), was decided on April 28, 2004, political gerrymandering claims were analyzed using the standard set by the plurality in *Davis v. Bandemer,* 478 U.S. 109, 106 S. Ct. 2797 (1986), and its progeny. In *Vieth* a plurality of the Court concluded that political gerrymandering claims were nonjusticiable and that *Davis v. Bandemer* should be overruled. Justice Kennedy, concurring in the judgment, joined in the view that the political gerrymandering claims before the Court in *Vieth* were due to be dismissed. Justice Kennedy, however, declined to "foreclose all possibility of judicial relief if some limited and precise rationale were found to correct an established violation of the Constitution in some redistricting cases." *Vieth,* 541 U.S. at 306 (Kennedy, J., concurring in the judgment).

"When a fragmented Court decides a case and no single rationale explaining the result enjoys the assent of five Justices, 'the holding of the Court may be viewed as that position taken by those Members who concurred in the judgments on the narrowest grounds . . . .'" *Marks v. United States,* 430 U. S. 188, 193, 97 S. Ct. 990, 993 (1977) (quoting *Gregg v. Georgia,* 428 U.S. 153, 169 n.15, 96 S. Ct. 2909, 2923 n.15 (1976) (opinion of Stewart, Powell, and Stevens, JJ.) Measured against this standard, the holding in *Vieth* is that the lower court did not err in dismissing the political gerrymandering claims made by the Vieth Plaintiffs. The holding is not, as the Gustafson Plaintiffs implicitly suggest in their Amended Complaint, either Justice Kennedy's assertion that "[t]he Fourteenth Amendment standard governs . . . ," 541 U.S. at 313-14, 124 S. Ct. at 1797 (Kennedy, J., concurring in the judgment), or his assertion that "[t]he First

Amendment may be the more relevant constitutional provision in future cases that allege unconstitutional gerrymandering." 541 U.S. at 314, 124 S. Ct. at 1797 (Kennedy, J., concurring in the judgment). None of the other Members in the majority concur in those views, and the remaining Members dissented. Finally, the four dissenting members proposed three different legal standards.

Accordingly, the question becomes what standard applies, and how is it to be satisfied. In Secretary of State Worley's view, the responsibility to articulate that standard falls on the Gustafson Plaintiffs. Setting out Equal Protection and First Amendment claims in apparent reliance on Justice Kennedy's opinion concurring in the judgment in *Vieth v. Jubelirer*, as the Gustafson Plaintiffs do in their Amended Complaint, does not satisfy that responsibility. Justice Kennedy spoke only for himself in his opinion.

While Secretary of State Worley does not believe it to be her responsibility to articulate the legal standard applicable to political gerrymandering claims, she can point to some ways in which such a claim cannot be proved. As a general matter, redistricting is an inherently political activity, so a political gerrymandering claim is based on the contention that "too much" politics tainted an inherently political activity. *See, e.g. Gaffney v. Cummings,* 412 U.S. at 753, 93 S. Ct. at 2331. ("The reality is that districting inevitably has and is intended to have substantial political consequences."). The showing that a political gerrymandering plaintiff should be required to make should include evidence tending to show that too much politics so infected the process as to deny the minority the chance to compete.[3] This cannot be done by:

---

[3] In *Vieth,* the plurality rejected a proposed standard under which the drafters of the plan "acted with a *predominant intent* to achieve partisan advantage" because it was not, *inter alia,* judicially manageable. 541 U.S. at 284-85, 124 S. Ct. at 1780-81.

(1)     Pointing to evidence of an alleged lack of proportionality.  Even Justice Kennedy, on whose opinion the Gustafson Plaintiffs otherwise appear to rely, noted:

> The fairness principle appellants propose is that a majority of voters in the Commonwealth should be able to elect a majority of the Commonwealth's congressional delegation.  There is no authority for this precept.  Even if the novelty of the proposed principle were accompanied by a convincing rationale for its adoption, there is no obvious way to draw a satisfactory standard from it for measuring an alleged burden on representational rights.

541 U.S. at 308, 124 S. Ct. at 1793-94 (Kennedy, J., concurring in the judgment).  The plurality in *Vieth*, likewise, thought little of this contention.  *See* 541 U.S. at 288, 124 S. Ct. at 1782; *see also* 42 U.S.C. § 1973(b) ("Provided, that nothing in this section establishes a right to have members of a protected class elected in numbers equal to their proportion in the population."); *cf. Davis v. Bandemer,* 478 U.S. at 131-32, 106 S. Ct. at 2810 ("[A] group's electoral power is not unconstitutionally diminished by the simple fact of an apportionment scheme that makes winning elections more difficult, and a failure of proportional representation alone does not constitute impermissible discrimination under The Equal Protection Clause.").

(2)     As noted above, the use of an overall deviation standard of $\pm$ 5% does not make the plan unconstitutional.  *See Montiel v. Davis,* 215 F. Supp. 2d at 1285-86; *Rodriguez v. Pataki,* 308 F. Supp. 2d 346, 366-67 (S.D. N.Y. 2004) (three-judge court).

(3)     "The possibility that a more equipopulous apportionment plan could have been drawn does not, standing alone, establish a one-person-one-vote violation." *Id.,* 215 F. Supp. 2d at 1288.

(4)     The invocation of the judicial eye promises a standard that is incapable of principled judicial application.  Such a beauty-in-the-eye-of-the-beholder standard turns on the identity of the beholder.  In any event, the judicial eye must be trained on some evidence of probative value.

(5)     Any assertion that First Amendment rights have been infringed must be viewed in its larger context.  As one three-judge court noted:

> [T]here are no allegations that the California Republicans have been "shut out" of the political process, nor are there allegations that anyone has ever interfered with Republican registration, organizing, voting, fund-raising, or campaigning. Republicans are free to speak out on issues of public concern; plaintiffs do not allege that there are, or have ever been, any impediments to their full participation in the uninhibited, robust, and wide-open public debate on which our political system relies.

*Badham v. Eu,* 694 F. Supp. 664, 670 (N.D. Cal. 1988) (three-judge court) (internal quotation omitted), *aff'd,* 488 U.S. 1024, 109 S. Ct. 829 (1989).

Viewed against this backdrop, the Gustafson Plaintiffs' claims are due to fail.  In their Complaint, as amended, they point to an alleged lack of proportionality (No. 9 at 44-45, ¶ 138), the use of an overall deviation of 10% (No. 9 at 35, ¶ 107), and the possibility that a better plan could be drawn (No. 9 at 35, ¶ 106, 36, ¶ 110).  These allegations, standing alone, are insufficient, and adding nothing to nothing yields nothing.  Their remaining allegations are largely conclusory and do little to guide the judicial eye, whose aid they also invoke (No. 9 at 142, ¶ 139).  In short, whether they base their political gerrymandering claims on the Equal Protection Clause or the First Amendment, the Gustafson Plaintiffs have failed to state a claim as to which relief may be granted.

## CONCLUSION

For the reasons stated in Secretary of State Worley's Motion for Judgment on the Pleadings and this Memorandum, this Court should grant Secretary of State Worley's Motion and dismiss the Amended Complaint.

Respectfully submitted,

**TROY KING**
**ATTORNEY GENERAL**
**BY:**

**s/ John J. Park, Jr.**
John J. Park, Jr.
Bar Number: PARKJ8382
Assistant Attorney General
*Attorney for Defendants*
OFFICE OF THE ATTORNEY GENERAL
STATE OF ALABAMA
11 South Union Street
Montgomery, Alabama  36130-0152
Telephone:  (334) 242-7300
Fax:  (334) 353-8440
E-mail:  jpark@ago.state.al.us


**s/ Charles B. Campbell**
Charles B. Campbell
Bar Number:  CAMPC6423
Assistant Attorney General
*Attorney for Defendants*
OFFICE OF THE ATTORNEY GENERAL
STATE OF ALABAMA
11 South Union Street
Montgomery, Alabama  36130-0152
Telephone:  (334) 242-7300
Fax:  (334) 353-8440
E-mail:  ccampbell@ago.state.al.us

## CERTIFICATE OF SERVICE

I HEREBY CERTIFY that on the 15th day of July, 2005, I electronically filed the foregoing with the Clerk of the Court using the CM/ECF system which will send notification of such filing to the following:

| | |
|---|---|
| Mark G. Montiel, Esq.<br>6752 Taylor Circle<br>Montgomery, AL 36117 | Robert D. Segall, Esq.<br>Shannon L. Holliday, Esq.<br>Copeland, Franco, Screws & Gill<br>P.O. Box 347<br>Montgomery, AL 36101-0347 |
| Frank B. Strickland, Esq.<br>Anne W. Lewis, Esq.<br>Strickland Brockington Lewis, LLP<br>Midtown Proscenium, Suite 2000<br>1170 Peachtree Street, NE<br>Atlanta, GA 30309 | James U. Blackshear, Esq.<br>710 Title Building<br>300 North Richard Arrington Blvd.<br>Birmingham, AL 35203-3352 |
| | Larry T. Menefee, Esq.<br>407 South McDonough Street<br>Montgomery, AL 36104 |

And I hereby certify that I have mailed by U.S. Postal Service the document to the following non CM/ECF participants:

Edward Still
2112 11th Avenue South, Suite 201
Birmingham, AL 35205

 

s/ John J. Park, Jr.
John J. Park, Jr.
Bar Number: PARKJ8382
Assistant Attorney General
*Attorney for Defendants*
OFFICE OF THE ATTORNEY GENERAL
STATE OF ALABAMA
11 South Union Street
Montgomery, Alabama 36130-0152
Telephone: (334) 242-7300
Fax: (334) 353-8440
E-mail: jpark@ago.state.al.us
