IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF ALABAMA
SOUTHERN DIVISION

| | | |
|---|---|---|
| LIONEL GUSTAFSON et al., | § | |
| | § | |
| Plaintiffs, | § | |
| | § | |
| v. | § | CIVIL ACTION NO. |
| | § | 1:05-cv-00352-CG-L |
| ADRIAN JOHNS, et al., | § | |
| | § | Three Judge Court |
| Defendants. | § | |
| | § | |

### PLAINTIFFS' SUPPLEMENTAL BRIEF IN OPPOSITION TO DEFENDANTS' MOTION FOR JUDGMENT ON THE PLEADINGS

COME NOW PLAINTIFFS in the above-styled case ("Plaintiffs"), and, for their

Supplemental Response in Opposition to Defendants' Motion for Judgment on the

Pleadings ("Defendants' Motion"), show the Court as follows:

In its September 30, 2005 Order, this Court posed six questions and requested

supplemental responses from the parties addressing the preclusive effect of the *Montiel v.*

*Davis* litigation raised by Defendants' Motion.   To the extent that the Court's questions

call for evidence outside the pleadings, without waiving any right as a respondent to a

motion for judgment on the pleadings and without intending to transform Defendants'

Motion into a motion for summary judgment, Plaintiffs incorporate their Opposition to

Defendants' Motion to Take Judicial Notice of Records and Proceedings in *Montiel v.*

*Davis* ("Plaintiffs' Opposition to Defendants' Motion to Take Judicial Notice"), as part of

their supplemental response.   That being said, courts caution that "the requisites for

finding nontraditional forms of privity . . . are not readily determined from the

pleadings." *Headwaters, Inc. v. United States Forest Service*, 399 F.3d 1047, 1054 (9[th]

Cir. 2005).  Dismissal at this stage on grounds of the pleadings alone is improper as virtual privity involves determinations of fact which are not resolvable by review of the pleadings alone.

A.          **COURT'S INQUIRY:  DISCUSS THE DOCTRINE OF VIRTUAL REPRESENTATION, AND THE RELEVANCE, IF ANY, OF THE PUBLIC LAW ASPECT OF THIS CASE**

**PLAINTIFFS' RESPONSE:  THERE WAS NO VIRTUAL REPRESENTATION OF THE GUSTAFSON PLAINTIFFS, AND THERE IS NO PUBLIC LAW ASPECT TO THIS CASE**

Plaintiffs discussed at length the doctrine of virtual representation in Plaintiffs' Opposition to Defendants' Motion to Take Judicial Notice (Docs. 102-121).  In that Opposition, Plaintiffs established that the *Montiel* plaintiffs were not the virtual representatives of Plaintiffs.   In response to the second part of the Court's inquiry, Plaintiffs respond that no public law aspect exists in this case and, therefore, the public law argument is not relevant.

With respect to virtual representation, the Eleventh Circuit recognizes only four factors which can establish such representation: (1) whether there was participation in the first litigation; (2) apparent consent to be bound; (3) apparent tactical maneuvering; and (4) close relationships between the parties and nonparties.  *EEOC v. Pemco Aeroplex, Inc.*, 383 F.3d 1280 (11th Cir. 2004).   The Alabama Supreme Court has opined that virtual representation ordinarily requires the Court to find the parties in the earlier action to be, in some sense, proper agents for the latter parties to support preclusion of the latter claim, a standard which is essentially identical to the federal standard.  *Morris v. Cornerstone Propane Partners, L.P.*, 884 So.2d 796 (2003).   As previously argued in Plaintiffs' Opposition to Defendants' Motion to Take Judicial Notice, none of these

factors exists in this case. Therefore, there is no virtual representation of the Gustafson Plaintiffs by the Montiel plaintiffs, and their claims are not barred by res judicata by virtue of virtual representation.

In *Tice v. America Airlines, Inc.* 162 F.3d 966 (7th Cir. 1999), the Seventh Circuit noted that: "As a matter of fact, a finding that nonparties were virtually represented in earlier litigation has rarely been used to actually bar litigation." *Id*. at 971. Quoting another Seventh Circuit decision, the *Tice* court explained why that is the case:

> "[T]he doctrine of 'virtual representation' recognizes, in effect, a common-law kind of class action. It applies only when there is a practical identity of interests between the former litigant and the present one." (As we explain below, the fact that virtual representation looks like a class action but avoids compliance with Rule 23 is a weakness, not a strength, of the doctrine.) In properly certified class actions, parties who have adequate notice and (at a minimum) an opportunity to opt out of an earlier case may, if their interests are sufficiently aligned with one of the earlier parties, be bound by the results of that litigation. See *Hansberry v. Lee*, 311 U.S. 32, 61 S.Ct. 115, 85 L.Ed. 22 (1940); and *Phillips Petroleum Co. v. Shutts*, 472 U.S. 797, 195 S.Ct. 2965, 86 L.Ed.2d 628 (1985).

*Tice,* 162 F.3d at 972.

The Gustafson Plaintiffs were afforded none of the protections described above. Therefore, there was no virtual representation of them to support a finding that their claims should be precluded.

There also is no public law issue which precludes the Gustafson Plaintiffs' claims. A public law issue is one which affects the plaintiffs' private interests only indirectly, such as an alleged misuse of public funds, the alleged flying of a confederate flag over governmental buildings, or other public action that has only an indirect impact on the plaintiff's interests. *EEOC v. Pemco Aeroplex, Inc.* 383 F.3d 1280 (11th Cir. 2004) <u>citing</u>,

*Richards v. Jefferson County, Ala.*, 517 U.S. 793, 798, 116 S.Ct. 1761, 135 L.Ed.2d 76 (1996), and *NAACP v. Hunt*, 891 F.2d 1555 (11th Cir. 1990).

    *NAACP v. Hunt* involved a general public law issue.  *Pemco*, 383 F.3d at 1289. At issue in *Hunt* and the earlier case involved in it, was the flying of a confederate flag above the American flag and on top of the capital building.  The Court noted that all Alabama citizens were exposed to the flag and that citizens of all races were free to be offended by its position.  Finding one *Hunt* plaintiff to be a plaintiff in the original action and that all plaintiffs in both actions were members of the state legislature of Alabama and the NAACP, the Court held the *Hunt* plaintiffs to be the virtual representatives of the original plaintiffs.

    The present case does not have a public law aspect to it at all, as it is not a case that only indirectly affects Plaintiffs' interest and it is not a case which can only be brought on behalf of the public at large.  In fact, neither this case nor *Montiel* was brought on behalf of the public at large.  This case does <u>not</u> involve broad public interest matters, such as misuse of public funds which affects every Alabama resident.  It instead involves legislation which negatively and directly affects a federal fundamental right of certain Alabama citizens – specifically, citizens residing in deliberately overpopulated districts – by diluting and debasing their votes.  Alabama citizens residing in districts of an ideal population and Alabama citizens residing in underpopulated districts have no such cause of action.  In fact, these citizens actually benefit from greater representation, but at Plaintiffs' expense.  In short, the plans at issue negatively and directly affect the voting rights of Alabama citizens living in overpopulated districts.

In *Richards v. Jefferson County, Ala.*, 517 U.S. 793, 798, 116 S.Ct. 1761, 135 L.Ed.2d 76 (1996), the United States Supreme Court suggested that states have wide latitude to establish procedures to limit the number of judicial proceedings in cases involving broad public interest matters.  *Richards*, 517 U.S. at 803, 116 S.Ct. at 1768. However, in cases in which individual interests are clearly and directly implicated, states are not afforded such latitude. *Id*.

The Supreme Court concluded that "extreme applications of the doctrine of res judicata may be inconsistent with a federal right that is "fundamental in character.'" *Id*. quoting *Postal Telegraph Cable Co., v. Newport*, 247 U.S. 464, 475, 38 S.Ct. 566, 570, 62 L.Ed. 1215 (1918).  Such is the case here.  The right to vote is a fundamental right of all citizens, including Alabama citizens.  *Kuhn v. Thompson*, 304 F.Supp.1313 (M.D. Ala. 2004). When a state's reapportionment scheme intrudes upon the fundamental right to vote for what can be characterized only as discriminatory and arbitrary reasons, it is the court's duty to step in.  *Larios v. Cox*, 300 F.Supp.2d 1320 (N.D. Ga. 2004).

In *Richards*, the Supreme Court addressed the distinction of "public" and "private" actions:

> Our present concern is solely with the question of whether the plaintiff has been accorded due process in the primary sense – whether it has had an opportunity to present its case and be heard in its support . . . . [W]hile it is for the state court to determine the adjective as well as the substantive law of the State, they must, in so doing, accord the parties due process of law. Whether acting through its judiciary or through its legislature, a State may not deprive a person of all existing remedies for the enforcement of a right, which the State has no power to destroy, unless there is, or was, afforded to him some real opportunity to protect it.

*Richards*, 517 U.S. at 804, 116 S.Ct. at 1768-69, citing *Brinkerhoff-Faris Trust & Sav. Co. v. Hill*, 281 U.S. 673, 50 S.Ct. 451, 74 L.Ed. 1107 (1930).   Likewise, in the present

case, to hold that the *Montiel* plaintiffs were the virtual representatives of Plaintiffs would be to deny Plaintiffs due process and the opportunity to present their case and be heard in support of their case.  This court cannot and should not deprive Plaintiffs of all existing remedies for the enforcement of their right to one person one vote, a right the State of Alabama has no power to destroy, and yet did, unless Plaintiffs are afforded some real opportunity to protect it.

Assuming for the sake of argument only that this case does involve a public law issue, such fact does not render the *Montiel* plaintiffs in privity with Plaintiffs.  There is still no relationship whatsoever, close or otherwise, between the *Montiel* plaintiffs and Plaintiffs.  In fact, no Gustafson Plaintiff was a plaintiff in *Montiel*, 11  Gustafson Plaintiffs do not know a single *Montiel* plaintiff, and eight Gustafson Plaintiffs only vaguely know one or two *Montiel* plaintiffs, either as a distant acquaintance or by name. Virtual representation based on some vague public law aspect in this case is simply not applicable or proper.

In the present case, a public issue is neither broad nor present.  The Plaintiffs' injury is one affecting a federal fundamental right and does not apply to all Alabama citizens equally.  Any vague public law aspect which may be found to exist in this case in no way renders the *Montiel* plaintiffs the virtual representatives of Plaintiffs.  Thus, any public law aspect of this case is of no relevance or significance to the doctrine of virtual representation among the parties, and Defendants' Motion must be denied.

**B.**　　　**COURT'S INQUIRY:  DISCUSS THE EXTENT TO WHICH THE *MONTIEL V. DAVIS* LITIGATION, WAS, IN SUBSTANCE, A CLASS ACTION, AND THE RELEVANCE THEREOF. *SEE DOE V. BUSH*, 261 F.3D 1037 (11TH CIR. 2001)**

**PLAINTIFFS' RESPONSE:  *MONTIEL V. DAVIS* WAS NEITHER
A CLASS ACTION NOR A DE FACTO CLASS ACTION AND
THEREFORE IS NOT BINDING ON PLAINTIFFS**

It is undisputed that none of the required elements of a class were met in *Montiel v. Davis,* including certification of a class by the district court.  In fact, there was never any attempt made by anyone, party or court, to certify a class.

In contrast, in *Doe v. Bush*, 261 F.3d 1037 (11th Cir. 2001), the Eleventh Circuit held that in certain limited situations where other class action requirements are met, an implied or de facto class may exist despite the absence of an order certifying the class. In *Montiel*, all of the requirements for class certification, including the certification order, were absent.  Therefore, *Doe* is inapposite.

Citing three Fifth Circuit cases, the *Doe* Court identified several factors a court might review to determine whether an implied class exists in any given case.  These factors are:  (1) that the complaint was brought on behalf of the plaintiff and "all others similarly situated;" (2) that the defendants never objected to the "class nature" of the action; (3) that the trial court made statements that suggested it thought the case was a class action; and (4) the judgment rendered by the district court contained relief "aimed at a class of people."  *Doe*, 261 F.3d at 1050 <u>citing</u> *Bing v. Roadway Express, Inc*., 485 F.2d 441 (5th Cir. 1973).  Applying these factors to the present case, it is clear that no implied or de facto class existed in *Montiel*.

First, while the *Montiel* plaintiffs' Third Amended Complaint alleges that the *Montiel* plaintiffs brought the action on behalf of themselves and all other citizens of the State of Alabama similarly situated, (*Montiel* Third Amended Complaint ¶¶ 6-10), all of the defendants in *Montiel* denied that the *Montiel* plaintiffs constituted a class or

represented that class.  (Answer of *Montiel* defendants ¶¶ 37-39; Answer of *Montiel* defendant-intervenors Guin & Hayden ¶¶ 37-39; Answer of *Montiel* defendant-intervenor Siegelman ¶¶ 37-39, all of which Answers are attached hereto as Exhibit A).  The *Montiel* defendants asserted that position through their attorneys, many of whom are present in this case.  *See* discussion in Section D.2. below.  Finally neither the *Montiel* court nor any other court (such as the Magistrate Court in *Doe*) entered any Order which indicated that a class of plaintiffs existed in *Montiel*.[1]

The second factor this Court must consider is the Defendants' position on the class nature of the *Montiel* case.  It is undisputed, as noted above, each of the *Montiel* defendants objected to the class nature of the *Montiel* action.  (Exhibit A, Answers of *Montiel* defendants and *Montiel* defendant-intervenors ¶¶ 37-39).  Thus, the second factor for finding an implied or de facto class is clearly not satisfied.  In short, <u>none</u> of the parties in *Montiel* <u>ever</u> treated the case as a class action.

The *Montiel* court also did not treat the case as a class action, and therefore, the third factor for de facto class status is not satisfied. The *Montiel* trial court never suggested that the case was a class action; in fact, the court rendered judgment which contained relief aimed only at the six individual *Montiel* plaintiffs.

The fourth factor for finding de facto class status is also not satisfied.  The final relief afforded in *Montiel* is clearly limited to the *Montiel* plaintiffs.  The *Montiel* defendants and *Montiel* defendant-intervenors objected to the class nature of the action

---

[1] Assuming arguendo that there was a class in *Montiel*, it would have been limited to "similarly situated" members, <u>i.e.</u>, other Alabama citizens living in districts represented by the six *Montiel* plaintiffs.

and the Court,  in its Memorandum Opinion and Order granting the *Montiel* defendants

summary judgment, stated:

> "[T]hat defendants' motions for summary judgment are due to be and are
> hereby GRANTED with JUDGMENT to be entered in favor of each of the
> defendants and each of the defendant-intervenors and against the
> plaintiffs . . ."

(Order dated July 8, 2002, p. 19 which is attached hereto as Exhibit B).   In a footnote,

the court  further stated "The plaintiffs in this case are Gonzalo Fitch Montiel, Sheldon A.

Day, John Lang, Camilla Rice, Bobby G. Humphreys and John Rice."   (Exhibit B, Order

dated July 8, 2002, p. 19).   Thus, the court did not deny <u>class</u> relief; it simply denied the

six *Montiel* plaintiffs individual relief.

In *Doe*, in each of the cases cited in *Doe*, and in each case decided since D*oe*, in

which an implied or de facto class action was found, the court <u>granted</u> class relief in favor

of the plaintiffs.   Plaintiffs have not located a single case in which a court <u>denied</u>

plaintiffs the relief they requested (as occurred in *Montiel*) yet concluded there was

implied or de facto class status.   *See Doe* (class relief granted to implied class of

developmentally disabled individuals despite district court's failure to certify class);

*Graves v. Walton County Board of Education*, 686 F.2d 1135 (5th Cir. 1980) (Even

though no formal order of certification was entered by district court, case was in fact a

class action and class relief was granted);  *Johnson v. General Motors Corp.*, 598 F.2d

432 (5th Cir. 1979) (lack of formal certification of class does not detract from the validity

of res judicata effect of judgment rendered in favor of plaintiffs' class); *Bolton v. Murray

Envelope Corp.*, 553 F.2d 881 (5th Cir. 1977) (class was properly certified and judgment

in favor of plaintiffs class binding despite fact that proper notice was not served on class

members); *Bing v. Roadway Express, Inc.* 485 F.2d 441 (5th Cir. 1973) (despite district

court's failure to formally certify class, class action exists and judgment in favor of plaintiffs class binding on all members); *Navarro-Ayala v. Hernandez-Colon*, 951 F.2d 1325 (1st Cir. 1991) (action was a de facto class action and class relief was granted); *Senter v. General Motors Corp.*, 532 F.2d 511 (6th Cir. 1976) (substance of the proceedings was that action was a class action despite fact that no formal certification was sought or granted; class relief was granted).

Further discussing the issue, the Seventh Circuit in *Tice v. American Airlines, Inc.*, 162 F.3d 966 (7th Cir. 1998) stated:

> [T]he doctrine of virtual representation recognizes, in effect, a common-law kind of class action. It applies only when there is a practical identity of interests between the former litigant and the present one. (As we explain below, the fact that virtual representation looks like a class action but avoids compliance with Rule 23 is a weakness, not a strength, of the doctrine.)
>
> Unless there is a properly certified class action, handled with the procedural safeguards both state and federal rules afford, normal privity analysis must govern whether nonparties to an earlier case can be bound to the result. There would be little point in having Rule 23 if courts could ignore its careful structure and create *de facto* class actions at will; indeed the Supreme Court's recent decision in *Amchem Products, Inc. v. Windsor*, 521 U.S. 591, 117 S.Ct. 2231, 138 L.Ed.2d 689 (1997), emphasizing the importance of following Rule 23's procedures for settlement cases, suggests that such an approach would be unauthorized.

*Tice*, 162 F.3d at 972-73. Likewise, in the present case, no party in *Montiel* or the court treated *Montiel* as a class action: (i) each of the *Montiel* defendants and *Montiel* defendant-intervenors denied the class action allegations in *Montiel's* Third Amended Complaint; (2) the *Montiel* plaintiffs never filed a motion to certify the class; (3) the court never expressly or impliedly approved the class action nature of the suit; and (4) the order denying the *Montiel* plaintiffs denied individual relief and not class relief.

In *Bittinger v. Tecumseh Products Co.*, 123 F.3d 877 (6th Cir. 1997), the Sixth

Circuit stated:

> Virtual representation's intense case-by-case analysis is particularly
> undesirable in circumstances where its application would  replace settled,
> rule-like procedures.  In cases such as the instant case, these procedures
> already exist in the form of Rule 23.  The application of the doctrine of
> virtual representation in these circumstances would create an end run
> around the limitations of Rule 23, and would as a result both avoid its
> limitations (which are explicitly grounded in due process) and replace a
> clear rule with an unruly standard.  Such a result would defeat the
> purposes of both res judicata and Rule 23.
> . . .
>
> [T]he Supreme Court in *Richards*, which requires a more limited analysis
> subject to the rules articulated in the Restatement and Rule 23 . . . binds us
> to a rule of res judicata limited to parties and their 'privities.'  It may not
> be extended, as would be the case under a broad 'virtual representation'
> doctrine to a class never certified.
>
> Under the proper test – that of the Restatement and Rule 23 – the plaintiffs
> in the instant case are not precluded from pursuing their claims.  Section
> 41 clearly requires 'approval of the court' for a representative of a class to
> 'represent,' for privity purposes, later plaintiffs.  [cite omitted] . . . .
> Section 40 provides: ' A person who agrees to be bound by the
> determination of issues in an action between others is bound in accordance
> with the terms of the agreement.' [cite omitted].  Here, no such agreement
> exists.  While it is true that one of the Restatement's comments suggests
> that an agreement may be implied . . . no such agreement should be
> inferred *except upon the plainest circumstances.*

*Bittenger* 123 F.3d at 882.

Likewise, in the present case, 15 Plaintiffs had no knowledge whatsoever of the

*Montiel* case and, accordingly, they could not have and did not agree to be bound by its

ruling, nor could they have.  The four Plaintiffs who had some vague knowledge about

*Montiel* also did not consent to be bound by the court's ruling.  The *Montiel* court never

overtly or impliedly approved the class action status of *Montiel* and no party or the court

treated the case as a class action.  In fact, the *Montiel* defendants and *Montiel* defendant-

intervenors objected to class status by denying all class allegations contained in the Third Amended Complaint.  Thus, there exists no basis for a finding that an implied or de facto class was created in *Montiel* for purposes of binding Plaintiffs to the *Montiel* adverse judgment.   Defendants' Motion must therefore be denied.

**C.      COURT'S INQUIRY:  DISCUSS THE IDENTITY OF INTERESTS BETWEEN THE PRESENT PARTIES AND THE PARTIES IN MONTIEL**

**PLAINTIFFS' RESPONSE:  THERE IS NO SUBSTANTIAL IDENTITY OF INTEREST BETWEEN THE GUSTAFSON PLAINTIFFS AND THE SIX *MONTIEL* PLAINTIFFS**

Plaintiffs previously discussed at length the lack of any identity of interests between the Gustafson Plaintiffs and the *Montiel* plaintiffs.  (Plaintiffs' Opposition to Defendants' Motion to Take Judicial Notice, Doc. 102, pp 10-11).  The *Montiel* plaintiffs were six individuals seeking to protect their individual rights to vote in compliance with constitutional requirements.  The Gustafson Plaintiffs are nineteen registered voters who reside in overpopulated state House and Senate districts throughout the state.   As discussed below, the interests of the *Montiel* plaintiffs and the Gustafson Plaintiffs, with respect to both the Senate and House plans, clearly differ.

In attacking the Senate plan, the interest of the plaintiffs in *Montiel* was in remedying racial discrimination they believed resulted from a racial gerrymander, which led to 75% of the black-majority Senate districts being underpopulated while only 40.74% of white-majority Senate districts were underpopulated. (Third Amended Complaint ¶63).  *Montiel* plaintiffs Montiel, Day, Humphreys and John Rice, who each lived in Senate districts which were majority-white and overpopulated, complained that

their votes were unconstitutionally diluted as the result of racial discrimination.  (Third Amended Complaint, ¶ 80).

*Montiel* plaintiff Lang's interest was to contest his Senate district 24 which he alleged was created by unconstitutionally splitting counties by taking black-majority portions from the City of Tuscaloosa and Tuscaloosa County and adjoining them by a narrow strip of counties and parts of counties in the Black Belt of Alabama.  (Third Amended Complaint ¶ 93).  Senate district 24 encompassed parts of six counties, three of which were divided on racial grounds. (Third Amended Complaint ¶ 93).  Portions of such counties which were black-majority were placed in Senate district 24, while white-majority portions of such counties were placed in white-adjoining Senate districts 21 and 22.  (Third Amended Complaint ¶ 93).

*Montiel* plaintiff Camilla Rice's interest was to contest her Senate district 28 which she also alleged was created by unconstitutionally splitting counties, cities and voting precincts to place black-majority areas of such counties and cities in Senate district 28 and to place white-majority areas of such counties and cities in Senate district 27.

Likewise, the *Montiel* plaintiffs contested the House map as racial discrimination resulting from an alleged racial gerrymander in which 85.19% of majority-black House districts were underpopulated and only 39.74 %s majority-white House districts were underpopulated.   The *Montiel* plaintiffs' interests were in proving that the House and Senate maps were the result of a systematic underpopulation of black-majority districts and systematic overpopulation of white-majority districts to achieve racial maximization in the creation of Senate and House districts (Third Amended Complaint p. 31).

Specifically, *Montiel* plaintiffs Montiel, Humphreys and John Rice each lived in House districts which were majority-white and overpopulated.   Because of the alleged racially based overpopulation, they claimed their votes were unconstitutionally diluted.

*Montiel* plaintiff Lang's complaint was that his House district 70 unconstitutionally split Tuscaloosa County and the City of Tuscaloosa, voting precincts and other communities of interest.  He contended that the boundary lines were predominantly motivated by race.  (Third Amended Complaint ¶ 100).

*Montiel* plaintiff Camilla Rice objected to her House District 83 because she alleged that the district unconstitutionally split Lee County and Russell County for purposes of placing black-majority parts of these counties in House District 83 and placing white-majority parts of these counties in white-majority House Districts 79 and 80.

None of the Gustafson Plaintiffs makes the racially-based claims asserted by the *Montiel* plaintiffs.  While the some of the *Montiel* plaintiffs asserted a one person, one vote claim, that claim was clearly grounded in a racial gerrymandering theory, and the *Montiel* plaintiffs attempted to prove a violation of one person, one vote solely under that theory.  On the other hand, the Gustafson Plaintiffs' claims have no racial component. The claims are (1) a strict one person, one vote claim based on the overpopulation of their Senate and House districts without a legitimate, consistently-applied state interest which justifies the overpopulation, (2) a political gerrymandering claim based on discrimination against the Gustafson Plaintiffs as Republicans and (3) a claim that Republican voters' rights to freedom of speech and association have been violated.

**D.**          **COURT'S INQUIRY: DISCUSS FACTORS RELEVANT TO WHETHER THERE IS A CLOSE RELATIONSHIP BETWEEN THE PARTIES IN THE PRESENT CASE AND THE PARTIES IN *MONTIEL*, INCLUDING , INTER ALIA: ANY PARTIES IN COMMON, ANY ATTORNEYS IN COMMON, ANY SUPPORTERS IN COMMON (FINANCIAL OR OTHERWISE); PUBLICITY ATTENDING THE MONTIEL LITIGATION, OR OTHER EVIDENCE OF AWARENESS THEREOF OR ACQUIESCENCE THEREIN BY PRESENT PARTIES**

**PLAINTIFFS' RESPONSE: ALL RELEVANT FACTORS DEMONSTRATE THAT THERE IS NO CLOSE RELATIONSHIP BETWEEN THE PARTIES IN THIS CASE AND THE PARTIES IN *MONTIEL***

In their Response in Opposition to Defendants' Motion to Take Judicial Notice, Plaintiffs address in detail the complete lack of any relationship between themselves and the *Montiel* plaintiffs. *See* Plaintiffs' Opposition to Defendants' Motion to Take Judicial Notice and Declarations of Plaintiffs, filed August 5, 2005. (Docs. 102- 121). In response to the Court's inquiry, Plaintiffs add the following:

1.     *Parties in Common*

With respect to parties in common, there are no plaintiffs in common between the two cases, and only a minimal number of defendants. Not a single Gustafson Plaintiff was even remotely involved in *Montiel* or with any *Montiel* plaintiff. None of the Gustafson Plaintiffs had any substantive knowledge whatsoever of the *Montiel* case and the majority had no knowledge that the *Montiel* case even existed.

The defendants in common between the cases are certain state election officials, i.e., probate judges and the Secretary of State, who, by virtue of their position, would be named in any such case.[2]

The Defendant-Intervenors in this case are completely different from those in *Montiel*. In the present case, Governor Bob Riley has intervened as a defendant in his official capacity, as did then-Governor Don Siegelman in the *Montiel* case. Defendant-Intervenors Lowell Barron, Hank Sanders and Seth Hammett, who were not in the *Montiel* case, have intervened in the present case their individual capacities. Ken Guin and Andrew Hayden, who intervened as defendants in *Montiel*, did not seek intervention in the instant case. Thus, it is clear that there is a de minimus number of Defendants in this case who were also defendants in *Montiel.* The defendants in common are in both cases by virtue of the status as election officials.

     2.     *Attorneys in Common*

With regard to attorneys in common, Mark Montiel represented the six *Montiel* plaintiffs and serves as local counsel in this case for Frank B. Strickland and Anne W. Lewis. Strickland and Lewis were not involved in *Montiel.*

In addition to Mark Montiel, there are many attorneys in common for the Defendants, one of whom appeared in *Montiel* representing a different interest. In this case and in *Montiel,* John Park and Charles Campbell represented the named state defendant election officials. James Blacksher, who represents Defendant-Intervenor

---

[2]  In *Montiel*, the plaintiffs named the 23 probate judges who were in counties which comprised the districts being challenged and the then-Secretary of State. In the present case, Plaintiffs have named all of Alabama's probate judges and the current Secretary of State. Steve Windom, who was the Lieutenant Governor of Alabama during the *Montiel* litigation, was a named as a defendant in that case but is not a Defendant in this case.

Hammett in the case at hand, also participated in *Montiel*, as (1) counsel for Guin and Hayden who were defendant-intervenors and (2) apparently, as a witness. *See Montiel*, 215 F. Supp. 2d. at 1283, fn. 5 (citing "Blacksher Affidavit and Exhibits A-D attached thereto"). Finally,  Larry Menefee, who represents Defendant-Intervenors Barron and Sanders in the case now before this Court, represented then-Governor Siegelman in the *Montiel* case.

It is not surprising that there are attorneys common to both cases. Redistricting law is a specialized area in which few lawyers practice. There is a substantial likelihood that the Alabama attorneys named above would appear in every Alabama redistricting case.

The presence of some of the same attorneys does not equate to a close relationship between the Gustafson and *Montiel* plaintiffs. *South Central Bell Tel. Co., v. Alabama*, 526 U.S. 160, 167-68; 119 S.Ct. 1180, 1185, 143 L.Ed. 258 (1999) ("The Alabama trial court . . . point[ed] out that the plaintiffs here were aware of the earlier Reynolds Metal litigation and that one of the Reynolds Metal lawyers also represented the Bell plaintiffs. [cite omitted]. These circumstances, however, created no special representational relationship between the earlier and later plaintiffs. Nor could these facts have led the later plaintiffs to expect to be precluded, as a matter of res judicata, by the earlier judgment itself, even though they may well have expected that the rule of law announced in *Reynolds Metals* would bind them in the same way that a decided case binds every citizen."). In sum, the presence of Mr. Montiel and other lawyers in both the *Montiel* case and this one does not equate to a close relationship between the Gustafson and *Montiel* plaintiffs.

3.      *Supporters in Common*

Neither Defendants nor Defendant-Intervenors alleges that there are any

supporters in common to both cases, and there is, in fact, no evidence of any such

supporters.  Further, any evidence of supporters in common is not appropriate for a

motion for judgment on the pleadings, on which evidence outside the pleadings is

prohibited.

4.      *Publicity attending the Montiel Litigation*

Defendants and Defendant-Intervenors make no allegation of publicity

surrounding the *Montiel* case which might in some way demonstrate a close relationship

between the parties.  Neither the State Defendants nor the Defendant-Intervenors has

cited any matter in the pleadings which indicates that there was such publicity.  Any

outside evidence of such publicity submitted for purposes of the State Defendants'

Motion for Judgment on the Pleadings or Defendant-Intervenor Hammett's Motion to

Dismiss would be improper.

While there is nothing before the Court that suggests publicity surrounding the

*Montiel* case which might in some way demonstrate a close relationship between the

parties, the Gustafson Plaintiffs are clear that that they were not aware of the *Montiel*

litigation, other than the four who heard of the case of it in passing.  Thus, there is no

evidence whatsoever of publicity attending the *Montiel* litigation which might suggest a

close relationship between the parties.

5.      *Other Evidence of Awareness thereof or Acquiescence therein by
        the Present Parties*

Attached to Plaintiffs' Objection to Motion to Take Judicial Notice is evidence of

each Plaintiff's total lack of awareness, knowledge and acquiescence in the *Montiel*

proceedings.  Plaintiffs draw the Court's attention to such evidence in direct response to the Court's question but in so doing in no way intend to convert Defendants' Motion into a motion for summary judgment.  A review of the Gustafson Plaintiffs' Declarations reveals that Plaintiffs were completely unaware of any substantive aspect of the *Montiel* case and proceeding and could not, therefore, have acquiesced in it.

**E.        COURT'S INQUIRY:  DISCUSS THE ADEQUACY OF LEGAL REPRESENTATION OF PLAINTIFFS IN MONTIEL**

**PLAINTIFFS' RESPONSE:  THE PLAINTIFFS WERE NOT ADEQUATELY REPRESENTED IN *MONTIEL***

The question of adequate representation revolves around whether the Gustafson Plaintiffs' interests were adequately represented by the plaintiffs in the *Montiel* litigation. The answer to this question is a resounding "No."  There is no evidence or indication whatsoever that the *Montiel* litigation was conducted in a manner to ensure that the due process guarantees of the Fourteenth Amendment were afforded to nonparties in that litigation,  such as the Gustafson Plaintiffs.  *Thompson v. Smith*, 52 F. Supp. 2d 1364, 1369 ("When the party against whom res judicata is asserted was not itself a party to the prior lawsuit, however, the court must undertake a further inquiry to determine whether the application of res judicata would offend the due process guarantees of the fourteenth amendment to the United States Constitution").

While the *Montiel* plaintiffs requested class status in their Third Amended Complaint, the defendants in *Montiel* objected to the purported class status.  The *Montiel* court never certified, presumed, respected or in any way recognized or acknowledged a class of plaintiffs.  Furthermore, none of the *Montiel* parties or the *Montiel* court took care to protect the interests of unrepresented parties by providing notice of any type.

The Gustafson Plaintiffs, nonparties and strangers to the *Montiel* litigation who had no notice of the proceedings in *Montiel*, clearly were not adequately represented by the individual plaintiffs in that litigation.

Further, nothing supports any inference of close organizational ties between the Gustafson Plaintiffs and the *Montiel* plaintiffs.  There is no suggestion that the *Montiel* plaintiffs thought they were representing anyone other than themselves or were the alter egos of any other potential plaintiffs, including the Gustafson Plaintiffs.  There is no indication that the Gustafson Plaintiffs played any role in the *Montiel* litigation.  In fact, there is direct evidence to the contrary, as each Plaintiff, in his or her declaration, testified that he or she played <u>no</u> role in and had little or no knowledge of the *Montiel* litigation.

*Thompson v. Smith*, 52 F.Supp.2d 1364 (M.D. Ala. 1999), cited by Defendant-Intervenor Hammett in his Motion to Dismiss, is clearly distinguishable from the issue before this Court.  In *Thompson*, both groups of plaintiffs were participating together in a challenge to redistricting plans.  Both groups of plaintiffs had knowledge of and opportunity to participate in separate state court proceedings in which the Rices were plaintiffs in a challenge to the 1990's redistricting plans.  The Thompson court found both groups of plaintiffs to have identical or closely aligned interests and characterized them as alter egos of one another.  *Thompson,* 52 F.Supp.2d at 1369.  In this case, the Gustafson Plaintiffs had no knowledge of, notice of or opportunity to participate in the *Montiel* litigation.

The fact that the *Montiel* plaintiffs pursued racial gerrymander claims rather than the one person, one vote, political gerrymander and First Amendment claims being pursued by the Gustafson Plaintiffs is further evidence of inadequate representation of the

Gustafson Plaintiffs' interests.  The Gustafson Plaintiffs' interests clearly do not include racial discrimination claims.  Instead, the Gustafson Plaintiffs assert violations of their constitutional rights due to the deliberate overpopulation of Republican districts and deliberate underpopulation of Democrat districts based solely on the perceived politics of those districts.

Adequate representation can arise in a number of circumstances. *See Richards v. Jefferson County, Ala.*, 517 U.S. 793 798, 116 S.Ct. 1761, 1766, 135 L.Ed.2d 76 (1996) (a judgment that is binding on a guardian or trustee may also bind the ward or the beneficiaries of a trust); *Hansberry* (the judgment in a class action may be binding on members of that class).  However, adequate representation cannot be presumed if such would lead to a denial of due process.  *Martin v. Wilkes* 490 U.S. 755, 761-62, 109 S.Ct 2180, 2184, 104 L.Ed.2d 835 (1989) ("where a special remedial scheme exists expressly foreclosing successive litigation by nonlitigants, as for example in bankruptcy or probate, legal proceedings may terminate preexisting rights if the scheme is otherwise consistent with due process).  The complete lack of evidence of adequate representation of the Gustafson Plaintiffs in the *Montiel* litigation mandates a finding that those Plaintiffs were not adequately represented in *Montiel*, and that their claims are <u>not</u> barred by *Montiel*. Holding otherwise completely denies the Gustafson Plaintiffs due process.

**F.**     **COURT'S INQUIRY:  ANY EVIDENCE OF TACTICAL MANEUVERING OR EFFORTS TO AVOID THE PRECLUSIVE EFFECT OF *MONTIEL*, AND THE RELEVANCE THEREOF**

**PLAINTIFFS' RESPONSE:  THERE IS NO EVIDENCE WHATSOEVER OF TACTICAL MANEUVERING OR EFFORTS TO AVOID THE PRECLUSIVE EFFECT OF *MONTIEL***

The absence of a political gerrymander claim in *Montiel* and the presence of a *Montiel* lawyer in this case is Defendants' only alleged evidence of a "degree of tactical maneuvering"  in this case. Defendants' Reply to Plaintiffs' Response in Opposition to Defendants' Motion for Judgment on the Pleadings, p.10 (Doc. 107).   There is, in fact, no evidence whatsoever of tactical maneuvering or efforts to avoid the preclusive effect of *Montiel* by Plaintiffs or their attorneys in this case.

Ironically, there is evidence of tactical maneuvering on the part of Defendants in this case.  In their Reply to Plaintiffs' Opposition to Defendants' Motion for Judgment on the Pleadings, Defendants accuse Plaintiffs of attempting a second bite at the apple, and state:

> The Gustafson Plaintiffs would have gained if the Montiel Plaintiffs had won, but seek not to be bound by their loss . . . . Indeed, redistricting cases are frequently and substantially lawyer-driven.  Finally, the State is entitled to a measure of peace.  If the Gustafson Plaintiffs do not prevail, new plaintiffs may appear to respond to the defendants' showing and the court's rationale.

Defendants' Reply to Plaintiffs' Response in Opposition to Defendants' Motion for Judgment on the Pleadings, p.10 (Doc. 107).   While counsel for Defendants admit that redistricting cases are lawyer-driven, they apparently do not recognize the role they could have played in *Montiel* to (i) bind Plaintiffs to the *Montiel*  loss, (ii) give their client, the State, its measure of peace, and (iii) prevent new plaintiffs (including Plaintiffs) from appearing to respond to the *Montiel* defendants' showing and the *Montiel* court's

rationale.  Had they wanted *Montiel* to be binding on future plaintiffs, as counsel for the *Montiel* defendants, they would not have objected to the class status proposed by the *Montiel* plaintiffs.  The *Montiel* defendants had nothing to lose by facilitating certification of a class in *Montiel*, because, as Defendants admit herein, if the *Montiel* plaintiffs had won, Plaintiffs would likely have benefited.  If the *Montiel*  plaintiffs had lost, class certification would have bound all future plaintiffs.  By denying the class allegations in the Third Amended Complaint, the *Montiel* defendants indicated their intent and desire to have the *Montiel* judgment apply only to the *Montiel* plaintiffs.  Considering this maneuver, Defendants should not be permitted to come back now and argue that the judgment should apply to all potential plaintiffs.  Defendants were the ones who had the last bite at that apple in *Montiel*, which they elected not to take.

## CONCLUSION

For the foregoing reasons, Defendant's Motion for Judgment on the Pleadings should be denied.

This ___ day of October, 2005.

Respectfully submitted,

/s/ Mark G. Montiel
Mark G. Montiel
Bar No. MONT9485
Alabama Bar No. ASB-9485-T68M
Attorney for Plaintiffs
MARK G. MONTIEL, P.C.
6752 Taylor Circle
Montgomery, Alabama  36117
Telephone:  334.396.3331
Facsimile:  334.396.4465
email:  mgmontielpc@aol.com

/s/ Frank B. Strickland
Frank B. Strickland
Bar No. STRIF0921
Georgia Bar No. 687600

/s/ Anne W. Lewis
Anne W. Lewis
Bar No. LEWIA7226
Georgia Bar No. 737490
Attorneys for Plaintiffs

**STRICKLAND BROCKINGTON
  LEWIS LLP**
Midtown Proscenium Suite 2000
1170 Peachtree Street, NE
Atlanta, Georgia  30309
Telephone: 678.347.2200
Facsimile:  678. 347.2210
email:  fbs@sbllaw.net
        awl@sbllaw.net

IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF ALABAMA
SOUTHERN DIVISION

| | | |
|---|---|---|
| LIONEL GUSTAFSON et al., | § | |
| | § | |
| Plaintiffs, | § | |
| | § | |
| v. | § | CIVIL ACTION NO. |
| | § | 1:05-cv-00352-CG-L |
| ADRIAN JOHNS, et al., | § | |
| | § | |
| Defendants. | § | |
| | § | |

CERTIFICATE OF SERVICE

I HEREBY CERTIFY that I have this day electronically filed the within and foregoing PLAINTIFFS' SUPPLEMENTAL BRIEF IN OPPOSITION TO DEFENDANTS' MOTION FOR JUDGMENT ON THE PLEADINGS with the Clerk of Court using the CM/ECF system, which will send notification of such filing to all parties to this matter via electronic notification:

Charles Brinsfield Campbell
Office of the Attorney General
State of Alabama
11 South Union Street
Montgomery, AL 36130
 (email): ccampbell@ago.state.al.us

John J. Park, Jr.
Office of the Attorney General
State of Alabama
11 South Union Street
Montgomery, AL 36130
(email): jpark@ago.state.al.us

Edward Still
2112 11th Avenue South, Suite 201
Birmingham, Alabama 35205
(email): still@votelaw.com

James U. Blacksher
P.O. Box 636
Birmingham, Alabama 35201
(email): jblacksher@ns.sympatico.ca

Robert D. Segall
Shannon L. Holliday
Copeland, Franco, Screws & Gill, P.A.
444 South Perry Street
P.O. Box 347
Montgomery, Alabama 36101-0347
(email): holliday@copelandfranco.com
(email): segall@copelandfranco.com

Larry T. Menefee
407 S. McDonough Street
Montgomery, Alabama 36104
(email): lmenfee@knology.net

Algert S. Agricola, Jr.
Slaten & O'Connor, P.C.
Winter Loeb Building
105 Tallapoosa Street, Suite 101
Montgomery, AL 36104
email:aagricola@slatenlaw.com

This 18[h] day of October, 2005.

/s/ Anne W. Lewis
Anne W. Lewis

**STRICKLAND BROCKINGTON LEWIS LLP**
Midtown Proscenium, Suite 2000
1170 Peachtree Street, NE
Atlanta, Georgia 30309
(t): 678.347.2200
(f): 678.347.2210

26