IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF ALABAMA
SOUTHERN DIVISION

| | | |
|---|---|---|
| LIONEL GUSTAFSON et al., | § | |
| | § | |
| Plaintiffs, | § | |
| | § | |
| v. | § | CIVIL ACTION NO. |
| | § | 1:05-cv-00352-CG-L |
| ADRIAN JOHNS, et al., | § | |
| | § | Three Judge Court |
| Defendants. | § | |
| | § | |

### PLAINTIFFS' RESPONSE IN OPPOSITION TO DEFENDANT-INTERVENOR HAMMETT'S MOTION TO DISMISS

COME NOW PLAINTIFFS in the above-styled case ("Plaintiffs"), and, for their Response in Opposition to Defendant-Intervenor Hammett's Motion to Dismiss,[1] show the Court as follows:

---

[1]     In conjunction with his Motion to Intervene, Defendant-Intervenor Seth Hammett ("Defendant-Intervenor Hammett") attached an Answer, Motion to Dismiss and Brief in Support. (Doc. 80).  After the Court permitted Defendant-Intervenor Hammett's intervention as an individual defendant, he re-filed his Answer, Motion to Dismiss and Supporting Brief, (Docs. 120, 121 and 122), which are now pending before the Court.

However, Defendant-Intervenors Barron and Sanders filed their Answer, Motion to Dismiss and Brief in Support separately from their Motion to Intervene. (Docs. 77, 78 and 79).  In its Order of July 19, 2005 (Doc. 88), this Court struck Defendant-Intervenors Barron and Sanders' Motion to Dismiss, Brief in Support and Answer but granted them leave to re-file those pleadings upon resolution of the motion to intervene. Although Defendant-Intervenors Barron and Sanders re-filed their Answer (Doc. 126), they did not re-file their Motion to Dismiss or Brief in Support.  Because they have now filed an Answer, Defendant-Intervenors Barron and Sanders apparently have abandoned their Motion to Dismiss.  Therefore, Plaintiffs do not respond to Defendant-Intervenors Barron and Sanders' Motion to Dismiss and Brief in Support, as the same have not been filed.

# I.       STATEMENT OF THE CASE

Defendant-Intervenor Hammett bases his motion to dismiss Plaintiffs' claims primarily on the two arguments previously made by Defendants Secretary of State and Probate Judges ("the State Defendants"): (1) that by virtue of *Montiel v. Davis*, the claims made by Plaintiffs in this case are barred by res judicata and collateral estoppel; and (2) that Plaintiffs have failed to state a claim for partisan gerrymandering.  For the reasons set forth in Plaintiffs' responses in opposition to the State Defendants' motions (Docs. 101, and 102), Defendant-Intervenors' motion based on those arguments should be denied.

While Defendant-Intervenor Hammett cites three additional grounds for dismissal, those grounds also fail to support his motion to dismiss.  First, Defendant-Intervenor Hammett argues that Plaintiffs' claims in the case at hand are barred by res judicata and collateral estoppel by virtue of another case, *Rice v. English;* in his opinion, the parties in this case and in *Rice* are substantially identical.  As discussed below, for the same reasons that *Montiel v. Davis* does not bar Plaintiffs' claims as res judicata or operate to collaterally estop Plaintiffs' claims, neither does *Rice v. English* preclude those claims.

Although Defendant-Intervenor Hammett acknowledges that partisan gerrymandering was the motivation for the design of Alabama's state House of Representatives and Senate redistricting plans, he argues that Plaintiffs have not stated a claim for illegal partisan gerrymandering.  Defendant-Intervenor's arguments appear to be that a plaintiff cannot ever state a claim for illegal partisan gerrymandering because, in

Defendant-Intervenor Hammett's opinion, there is no such claim.  While there is debate about how to prove such a claim, there can be no debate that the claim exists and that Plaintiffs have stated it, the relevant inquiry on a motion to dismiss.  Finally, Defendant-Intervenor Hammett makes the unsupported and unsupportable argument that Plaintiffs' constitutional claims are barred by laches; as only one of the three sets of state legislative elections scheduled to take place under these plans has yet occurred, Plaintiffs' claims are not too late.

## II.    STATEMENT OF FACTS

The facts relevant to Defendant-Intervenor Hammett's motion to dismiss are as follows:

In June 2005, the nineteen Plaintiffs in the case at hand ("the Gustafson Plaintiffs") filed this action, asserting that the current redistricting plans for the Alabama state Senate and House of Representatives ("the plans") violate their constitutional rights under the First and Fourteenth Amendments to and Art. IV, § 2 of the United States Constitution.  (Doc. 1-1).  Subsequently, the Gustafson Plaintiffs filed their Amended Complaint, in which they reiterated their claims under the same provisions of the Constitution and restated their claim of illegal partisan gerrymandering.  (Doc. 9-1).

The Gustafson Plaintiffs' 49 page Amended Complaint sets forth three claims: (1) violation of their right to equal protection under the Fourteenth Amendment in that the plans violate the constitutional guarantee of one person, one vote; (2) violation of their right to equal protection under the Fourteenth Amendment in that the plans are illegal partisan gerrymanders; and (3) violation of their rights to freedom of speech and association under the First Amendment.  (Doc. 9-1).

With respect to the first claim, the Gustafson Plaintiffs have alleged a violation of the Equal Protection Clause's guarantee of one person, one vote, stating the following:

1.  The ideal size of each of the thirty-five Alabama state Senate districts is 127,060, but under the Senate redistricting plan, the districts range in size from 120,942 to 133,302, for an overall range of population deviation of 9.73%.  Of the 35 districts, 18 districts are overpopulated, 9 with a relative population deviation of 4.0% or greater. Seventeen (17) of the districts are underpopulated, 7 with a relative population deviation in excess of –4.0%.  (Doc. 9-1, ¶ 108).

2.  The ideal size of each of the 105 Alabama state House districts is 42,353 but under the redistricting plan for the state House, the districts range in size from 40,241 to 44,447, for an overall range of population deviation of 9.93%.  Of the 105 districts, 52 districts are overpopulated; of those 52, nineteen (19) have a relative overall population deviation of +4.0%.  Fifty-three (53) of the 105 districts are underpopulated, with 19 districts having a relative population deviation in excess of –4.0%. (Doc. 9-1, ¶ 109).

3.  The population deviations were not the result of any effort on the part of the Alabama legislature to further a legitimate, consistently-applied state interest but were designed so as to promote the partisan agenda of the Democratic-controlled Legislature and the then-governor, also a Democrat, by systematically overpopulating or "packing" districts perceived to be Republican-leaning and underpopulating districts perceived to be Democrat-leaning.   (Doc. 9-1, ¶ 113).

4.   Furthermore, the systematic and intentional overpopulating of the state legislative districts in growing suburban areas and counties of Alabama, and the corresponding underpopulating of the districts in many inner-city urban areas and rural

"black belt" counties of Alabama in which population is declining, dilutes and debases the voters in the overpopulated districts.  (Doc. 9-1, ¶ 114).

5.   During the 2001 redistricting process, the Alabama Legislature had available technology that would have allowed the legislature to apply legitimate, consistently-applied state interests (which it did not do) and draw districts with lower population deviations.  (Doc. 9-1, ¶ 107, 138).

6.   Instead, the Alabama Legislature designed and passed plans tainted by arbitrariness and discrimination in that those plans arbitrarily dilute and debase the weight of certain citizens' votes based on how they vote, i.e., Republican v, Democrat and where they live, i.e., the growing suburban areas v. the shrinking urban and black belt areas.  (Doc. 9-1, ¶ 115, 116 and 119).

7.   The population growth trends in Alabama will exacerbate this vote dilution and debasement and will increase the size of the majority that will be denied its ability to elect a legislature of its choice through the current decade and beyond. (Doc. 9-1, ¶ 117).  Citizens living in underpopulated districts are and will continue to be afforded greater representation, to the detriment of voters residing in overpopulated districts, including the Gustafson Plaintiffs.  (Doc. 9-1, ¶ 120).

With respect to their next claim – illegal partisan gerrymandering in violation of the Equal Protection Clause – the Gustafson Plaintiffs allege that in drawing the state legislative districts, the Alabama legislature "used classification by political party in an invidious manner or in a way unrelated to any legitimate legislative objective." (Doc. 9-1, ¶ 133).   The Gustafson Plaintiffs assert that there was both the intention to discriminate against Republicans and "an actual discriminatory effect on Republicans, including

Plaintiffs, such that they are denied the opportunity to effectively influence the political process in the Alabama Legislature."  (Doc. 9-1, ¶¶ 136-137).  The Gustafson Plaintiffs assert that due to the gerrymandering, the Republican Party – the party receiving majority of total votes in a relevant election including presidential and gubernatorial, among others – has failed to obtain a majority of the relevant seats in an election under the state legislative redistricting plans and will be prevented from doing so in the foreseeable future.   (Doc. 9-1, ¶ 138).  Because of growth patterns, the discriminatory vote dilution and debasement will be exacerbated throughout the decade.  (Doc. 9-1, ¶ 111).

The Gustafson Plaintiffs' third claim is based upon a violation of their First Amendment rights to freedom of speech and association.  They assert that by packing and gerrymandering Republican-leaning districts, the Alabama Legislature discriminated against, and thus burdened the representational rights of, Republican representatives and voters.  (Doc. 9-1, ¶ 142).  Rather than consistently applying legitimate state interests to design the state legislative districts, the Alabama Legislature designed those districts based solely on political ideology, beliefs, affiliation or association. (Doc. 9-1, ¶¶ 142, 143). In creating such districts, the Alabama Legislature ensured that public debates on issues of public importance are chilled, in violation of the First Amendment. (Doc. 9-1, ¶ 142).

These are the claims made by the Gustafson Plaintiffs, in summary form.  As discussed below, the claims of the Gustafson Plaintiffs are not the claims made by the plaintiffs in either *Montiel v. Davis*, 215 F. Supp. 1279 (S.D. Ala. 2002) or *Rice v. English*, Case No. CV-01-2311 (15th Circuit Court, Montgomery County, Alabama).

In addition to the fact that the claims of the Gustafson Plaintiffs are not those of the *Montiel* or *Rice* plaintiffs, there is no substantial identity of interest between the Gustafson Plaintiffs and the *Montiel* or *Rice* plaintiffs:

- Not one of the Gustafson Plaintiffs was a plaintiff in *Montiel* or *Rice* or knew any of the *Rice* or *Montiel* plaintiffs well (most did not know those plaintiffs at all);

- Not one of the Gustafson Plaintiffs required *Montiel* or *Rice* to be filed and none ever participated in such filings in any way;

- Not one of the Gustafson Plaintiffs had any substantive awareness  of *Montiel* or *Rice*;

- With the exception of several Gustafson Plaintiffs who had heard of the *Montiel* case in passing, not one of the Gustafson Plaintiffs knew about *Montiel* or  *Rice* and therefore did not avoid becoming a plaintiff in either case;

- Not one of the Gustafson Plaintiffs was involved in, participated in or had a voice or vote in *Montiel* or *Rice*;

- Not one of the Gustafson Plaintiffs was involved in the discovery process in *Montiel* or *Rice*, served as a witness in either case or was involved in any strategic planning, discussions or decision-making at the trial or appellate level;

- Not one of the Gustafson Plaintiffs was ever previously represented by Mark G. Montiel, attorney for the *Montiel* and *Rice*  plaintiffs;

- Not one of the Gustafson Plaintiffs hired or paid any attorney's fees and costs arising out of *Montiel* or *Rice*;

- No party or attorney or anyone else involved in *Montiel* or *Rice* was or is legally accountable to any of the Gustafson Plaintiffs, and no such person was or is under the control of the Gustafson Plaintiffs or had or has the power to require anything of the Gustafson Plaintiffs.

- Not one of the Gustafson Plaintiffs had any authority to decide or voiced any opinion as to whether an appeal would be taken from the adverse judgment in *Montiel* or *Rice;* and

- Not one of the Gustafson Plaintiffs consented to be bound by the judgments in *Montiel* or *Rice.*

*See* original and supplemental Declarations of Gustafson Plaintiffs attached to Plaintiffs' Response in Opposition to State Defendants' Motion to Take Judicial Notice of the *Montiel* Pleadings and Proceedings, filed August 5, 2005 (Docs. 101 - 121)  and to Plaintiffs' Supplemental Response in Opposition to State Defendants' Motion to Take Judicial Notice of the *Montiel* Pleadings and Proceedings filed October 18, 2005.[2] Defendant-Intervenor Hammett does not argue or attempt to show otherwise.

### III.    ARGUMENT AND CITATION OF AUTHORITIES

Defendant-Intervenor Hammett seeks dismissal on three grounds: (1) res judicata and collateral estoppel, (2) failure to state claims under Federal Rule of Civil Procedure

---

[2]    By referring to the original and supplemental declarations of the Gustafson Plaintiffs, those Plaintiffs do not waive any rights of a respondent to a motion for judgment on the pleadings and motion to dismiss and do not intend for such motions to be converted to a motion for summary judgment.

12(b) (6) and (3) laches.  For the reasons set forth below, the Court should deny

Defendant-Intervenor Hammett's Motion to Dismiss.

## A.    THIS CASE IS NOT BARRED BY RES JUDICATA OR COLLATERAL ESTOPPEL

As discussed at length in the Gustafson Plaintiffs' earlier responses to the State

Defendants' motion for judgment on the pleadings, the claims made in *Montiel* were

made by different parties, who were not the representatives of the Gustafson Plaintiffs.

(Doc 102, pp. 3-12; Doc. 101, pp. 18-21).  Furthermore, the claims made by the *Montiel*

plaintiffs were essentially one claim: a racial gerrymandering claim.  Although the

*Montiel* plaintiffs claimed to assert a one person, one vote claim, they attempted to prove

that by establishing racial gerrymandering, which they ultimately failed to do.

In her concurring opinion, Judge Black summed up the *Montiel* plaintiffs'

attempt:

> Raising a novel "one man, one vote" argument, Montiel
> asserts the *de minimus* deviations contained in Alabama's
> new redistricting plans are the product of discrimination
> because they resulted from efforts to underpopulate
> majority black districts so as to maximize the relative
> voting strength of black voters.  In effect, Montiel argues
> the "one man, one vote" guarantee of the Equal Protection
> Clause has been violated because the districts were racially
> gerrymandered.

*Montiel*, 215 F. Supp. 2d at 1290.

The Gustafson Plaintiffs do not assert a racial gerrymandering claim in the case at hand,

and their one person, one vote claim is not based on a racial gerrymander claim.

Neither does this case involve the *Rice* plaintiffs or the claim asserted by them.

The three *Rice* plaintiffs were John W. Rice, William McCall Harris and Patricia

Christine N. Wood (the "*Rice* plaintiffs").  *Rice* Opinion, at 835 So.2d 157, 159 (Ala.

2002).  They did not represent the Gustafson plaintiffs; in fact, none of the Gustafson Plaintiffs were ever aware of the *Rice* litigation.  *See* Declarations of Plaintiffs, attached to Plaintiffs' Supplemental Response to State Defendants' Motion for Judgment on the Pleadings.  Furthermore, the *Rice* plaintiffs' sole claim was that the state Senate districts contained in the current Senate redistricting plan violated Article I, § 33 and Article IX, § 200 of the Alabama Constitution.  No such claim is asserted here.

The *Rice* litigation ended when the defendants moved for and were granted summary judgment.  The Gustafson Plaintiffs do not assert the state constitutional claim made by the *Rice* plaintiffs.

Despite the fact that neither the parties nor the claims in this case are the same as existed in *Montiel* or *Rice*, Defendant-Intervenor Hammett incorrectly concludes that all four required elements to establish claim preclusion are met.  As Plaintiffs have previously argued, the third and fourth elements are not met.  There is no substantial identity of the parties, and the same cause of action was not presented in both actions.

1. **Neither *Rice* nor *Montiel*  Bars the Gustafson Plaintiffs' Claims Because There is No Substantial Identity of the Parties**

In order to meet the third element of the res judicata/collateral estoppel test, the movant must show that there is substantial identity of the parties in the past and present cases.  Defendant-Intervenor Hammett's motion fails on this point because he makes no argument nor cites any authority in support of his position that, by virtue of *Rice* or *Montiel*, the claims at hand are precluded.

a. **There is no substantial identity of interests between the Rice Plaintiffs and the Gustafson Plaintiffs**

Defendant-Intervenor Hammett provides no argument supporting the existence of substantial identity between the *Rice* plaintiffs and the Gustafson Plaintiffs.  However, in the interest of caution, the Gustafson Plaintiffs will address the issue.

There are two recognized types of privity: (1) virtual representation of plaintiffs in a later case by plaintiffs in a prior case, and (2) control over the prior litigation by plaintiffs in a later case.  Neither is present in this case.  As previously argued, the Eleventh Circuit employs four factors in determining whether virtual representation exists:  (1) whether there was participation in the first litigation; (2) apparent consent to be bound; (3) apparent tactical maneuvering; and (4) close relationships between the parties and nonparties.  *Jaffree v. Wallace*, 837 F.2d 1461, 1467 (11th Cir. 1988) <u>citing</u> *Robinson v. National Cash Register Co.,* 808 F.2d 1119, 1124 (5th Cir. 1987).

Defendant-Intervenor Hammett does not allege that any Gustafson Plaintiff participated in the *Rice* case, and, in fact, none did participate. None was involved in discovery, none was a witness and none was involved in any of the strategic discussions or decision making at the trial or appellate level.  (Declarations of Plaintiffs, filed October 18, 2005).   No Plaintiff had any authority to decide whether any appeal would be taken from the adverse judgment in the *Rice* case.   (Declarations of Plaintiffs, filed October 18, 2005).    Thus, no Gustafson Plaintiff participated in the *Rice* case.  *See South Central Bell Tel. Co., v. Alabama*, 526 U.S. 160, 119 S.Ct. 1180, 143 L.E.2d 258 (1999); *Secretary of Labor v. Fitzsimmons*, 805 F.2d 682, 691-94 (7th Cir. 1986) (*en banc*) (no privity even though the Secretary of Labor had taken part in a joint discovery with plaintiffs in prior action and had intervened to object to settlement in private action).

In *South Central Bell*, several foreign corporations filed suit against Alabama's taxing authorities in state court challenging a franchise tax and seeking refund of their payments. The trial court ruled in favor of the taxing authorities. While the state court action was still pending, another foreign corporation filed suit against Alabama's taxing authorities in Federal court challenging the constitutionality of the imposed franchise tax. Rejecting the State's affirmative defenses of res judicata and collateral estoppel, the United States Supreme Court stated:

> The two relevant cases involve different plaintiffs and different tax years. Neither is a class action, and no one claims there is "privity" or some other special relationship between the two sets of plaintiffs. Hence, the Case Two Plaintiffs here are "strangers" to Case One, and for the reasons we explained in *Richards* [cite omitted], they cannot be bound by the judgment.
>
> The Alabama trial court . . . point[ed] out that the plaintiffs here were aware of the earlier Reynolds Metal litigation and that one of the Reynolds Metal lawyers also represented the Bell plaintiffs. [cite omitted]. **These circumstances, however, created no special representational relationship between the earlier and later plaintiffs. Nor could these facts have led the later plaintiffs to expect to be precluded, as a matter of res judicata, by the earlier judgment itself, even though they may well have expected that the rule of law announced in *Reynolds Metals* would bind them in the same way that a decided case binds every citizen.** (emphasis added**).**

*South Central Bell*, 526 U.S. 160, 167-68; 119 S.Ct. 1180, 1185, 143 L.Ed. 258 (1999).

Likewise, *Rice* and the present case involve different plaintiffs, different House and Senate Districts and different claims. *Rice* was not a class action and the circumstances of *Rice* and this case create no special representational relationship between Plaintiffs and the *Rice* plaintiffs. No pleading alleges any facts to suggest that

Plaintiffs could have expected to be precluded, as a matter of res judicata, by the *Rice* judgment.

Defendant-Intervenor Hammett also fails to meet the second factor required for virtual representation.  The Gustafson Plaintiffs certainly did not consent to be bound by a judgment in litigation to which they were not a party, and Defendant-Intervenor does not allege the contrary.

The third factor, "tactical maneuvering," is the "maneuvering to avoid preclusion."  *Pemco Aeroplex*, 383 F.3d at 1288.   Defendant-Intervenor Hammett does not allege that the Plaintiffs participated in a tactical maneuvering, and no Plaintiff avoided being a party in *Rice*.  (Declarations of Plaintiffs, filed October 18, 2005).  There was clearly no privity in any form or fashion between the Gustafson Plaintiffs and the *Rice* plaintiffs and, consequently, neither res judicata nor collateral estoppel applies in this case.

 Other factors relevant to whether there is a close relationship between the *Rice* plaintiffs and Plaintiffs are: (1) parties in common; (2) attorneys in common; (3) common supporters, (4) publicity attending the *Rice* litigation or other evidence or awareness thereof or acquiescence therein by present parties.   None of those factors demonstrate a close relationship between the plaintiffs in the various cases currently at issue.  There are no plaintiffs in common between *Rice* and this case.  As previously argued in Plaintiffs' Opposition to Defendants' Motion for Judgment on the Pleadings, the fact that the *Rice* plaintiffs' attorney, the *Montiel* plaintiffs' attorney and Plaintiffs' local counsel is the same attorney is of no consequence when determining substantial identity of parties.  See

*South Central Bell Tel. Co. v. Alabama*, 526 U.S. 160, 119 S.Ct. 1180, 143 L.Ed.2d 258

(1999) (privity not found  even when plaintiffs in both cases shared the same lawyer).

There is no evidence of common financial supporters in the various cases,

publicity attending the *Rice* litigation, awareness of *Rice* or acquiescence therein by any

Plaintiff, or tactical maneuvering or efforts by Plaintiffs to avoid the preclusive effect of

*Rice*.  Defendant-Intervenor does not allege to the contrary.

A final factor is whether the *Rice* plaintiffs adequately represented the interests of

the Gustafson Plaintiffs.   As previously noted, *Rice* challenged whether the redistricting

plans violated the Alabama Constitution, not the United States Constitution; the

Gustafson Plaintiffs' interests clearly were not adequately represented therein.

There is no relationship whatsoever between the *Rice* plaintiffs and the Gustafson

Plaintiffs.  Therefore, Defendant-Intervenor Hammett's claims of res judicata and

collateral estoppel fail, and his motion to dismiss should be denied.

> **b.      There is no substantial identity between the *Montiel***
> **Plaintiffs and the Plaintiffs in this case**

While Defendant-Intervenor Hammett does not argue substantial identity between

the *Rice* plaintiffs and Plaintiffs herein, he does make that claim with respect to the

*Montiel* and Gustafson plaintiffs.   Relying on *Thompson v. Smith*, 52 F.Supp.2d 1364

(M.D. Ala. 1999), Defendant-Intervenor Hammett contends there is substantial identity

between the *Montiel* plaintiffs and Plaintiffs because: (1) the *Montiel* plaintiffs "sought to

be designated as representatives of all [similarly situated] Alabama voters." (Intervenor

Hammett's  Brief, p. 9); (2) all such plaintiffs challenged the same State House and/or

Senate redistricting plans, asking the court to declare the plans unconstitutional; and (3)

all such plaintiffs were (and are) represented by Mark Montiel.  However, none of these reasons creates substantial identity between the parties.

The present case is easily distinguishable from *Thompson*.   *Thompson* involved two sets of plaintiffs in two challenges to Alabama's 1990's state redistricting plans. The two sets of plaintiffs were:  (1) the *Rice* plaintiffs (two white voters); and (2) the *Thompson* plaintiffs (a group of white voters who the *Rice* plaintiffs later added to their complaint).  In 1993, a lawsuit was filed in state court challenging Alabama's redistricting plans ("*Sinkfield* action").  In  the *Sinkfield* action,  the state court entered a consent judgment between the *Sinkfield* parties and the Secretary of State of Alabama approving the redistricting plan for the Alabama Legislature.  In 1997, the *Rice* plaintiffs filed a federal lawsuit challenging the *Sinkfield* consent order ("Rice federal action"). The *Rice* federal court ordered the *Rice* plaintiffs to intervene in the *Sinkfield* action, which they did.  After intervening in the *Sinkfield* action, the *Rice* plaintiffs were granted leave to amend and amended the *Rice* federal complaint to add the *Thompson* plaintiffs. In this amendment, the *Thompson* plaintiffs essentially adopted the *Rice* plaintiffs' claims.

The *Sinkfield* court invited the *Thompson* plaintiffs to intervene in the *Sinkfield* action, but the *Thompson* plaintiffs refused.  After a hearing on the merits, the *Sinkfeld* court dismissed the *Rice* plaintiffs' claims, on grounds that they lacked merit, and insufficient evidence.  Having lost in the *Sinkfield* action, the *Rice* plaintiffs returned to the *Rice* federal action, which was dismissed on the basis of res judicata and other grounds.  At this time, the *Rice* federal court stayed the *Thompson* plaintiffs' claims to afford them an opportunity to file their claims in state court.

The *Rice* plaintiffs appealed the *Sinkfield* court decision, which the Alabama Supreme Court dismissed as moot, because the next legislative election was about to commence and the 2000 census would result in a new round of redistricting.   A month later, the *Rice* federal court issued a show cause order as to why the *Rice* federal action should not be dismissed in light of the Alabama Supreme Court's decision regarding the *Sinkfield* judgment against the *Rice* plaintiffs.  The *Thompson* plaintiffs responded to the show cause order with a request that the court proceed with their claims, which the court treated as a motion for summary judgment.   At issue was whether the *Sinkfield* judgment against the *Rice* plaintiffs barred the *Thompson* plaintiffs' claims in the *Rice* federal action.

Ruling that some (but not all) of the *Thompson* plaintiffs' claims were barred, the court found the *Rice* plaintiffs had adequately represented some (but not all) of the *Thompson* plaintiffs' interests in the *Sinkfield* action.   The *Thompson* plaintiffs had not intervened in *Rice* federal action and asserted a separate interest in the subject matter of the lawsuit.  Instead, they were joined as parties by amendment to the *Rice* plaintiffs' complaint.  The court held that the *Thompson* plaintiffs were not strangers to the *Sinkfield* action litigation; they were invited to join in and declined.  Therefore, the court concluded they were "alter-egos of the *Rice* plaintiffs with identical or closely–aligned interests." *Thompson*, 52 F.Supp.2d at 1369.

The facts of the present case are clearly distinguishable from *Thompson*.  The Gustafson Plaintiffs were not added by amendment to either *Rice* or *Montiel*.  They were not invited to join *Rice* or *Montiel*, and in fact, most of the Gustafson Plaintiffs did not

know either case existed.  Their interests are neither identical nor closely-aligned, and consequently, they cannot be deemed the alter egos of the *Rice* or *Montiel* plaintiffs.

Because neither the *Rice* plaintiffs nor the *Montiel* plaintiffs adequately represented Plaintiffs in *Rice* and *Montiel*, the next inquiry must be whether, as a matter of federal due process, *Rice* and *Montiel* can be binding on the Gustafson Plaintiffs.  To make that determination, the Court must look at:  (1) whether the *Rice* or *Montiel* plaintiffs purported to sue on behalf of a class that includes Plaintiffs; (2) whether there was full and fair consideration of the common issue; (3) whether Plaintiffs had been informed that *Rice* and *Montiel* were pending; and (4) whether each Plaintiff could choose for himself or herself whether to appear or default, acquiesce or contest in *Rice* or *Montiel*.  *Thompson*, 52 F.Supp.2d at 1369.

The answer to each of these inquiries is "No."  Neither the federal court in *Montiel* nor the state court in *Rice* entered any order establishing a class nor did those courts ever give any indication that the actions were considered class actions.  In *Montiel*, the plaintiffs originally made allegations of class status, but after the *Montiel* defendants and defendant-intervenors denied each and every class allegation, no party or the court gave a second thought to class status or class relief.   The *Montiel* trial court did not treat the *Montiel* plaintiffs as a plaintiffs' class, and it did not render class relief.

The second element – full and fair consideration of the common issue – also is not met.  There is no common issue; in neither *Rice* nor *Montiel* was there full and fair consideration of the claims made by the Gustafson Plaintiffs.  In *Rice*, the plaintiffs asserted a state constitutional challenge, a distinctly different claim from those asserted here.  In  *Montiel* the plaintiffs claimed racial discrimination motivated the

overpopulation of certain districts and the racial gerrymandering of other districts.  Thus, in neither case was there full and fair consideration to justify barring the claims of the Gustafson Plaintiffs who have absolutely no connection whatsoever with the *Rice* case or the *Montiel* case.

In addition, it is clear from the Declarations of Plaintiffs that the third and fourth elements of due process are not satisfied.  No Gustafson Plaintiff had any substantive knowledge of the *Rice* case or the *Montiel* case, and none had the option to choose for him or herself whether to appear, default, acquiesce or contest.  Consequently, none could have chosen any path in those cases.

Defendant-Intervenor Hammett's argument regarding de facto class status simply ignores the law.  To qualify as an implied or de facto class action, a case must meet the following four requirements:  (1) the complaint must have been brought on behalf of the plaintiff and "all others similarly situated;" (2) the defendants must never have been objected to the "class nature" of the action; (3) the trial court must have made statements that suggested it thought the case was a class action; and (4) the judgment rendered by the district court must have contained relief "aimed at a class of people."  *Doe v. Bush*, 261 F.3d 1037, 1050 <u>citing</u> *Bing v. Roadway Express, Inc*., 485 F.2d 441 (5th Cir. 1973).

As more specifically argued in Plaintiffs' Supplemental Opposition to Defendants' Motion for Judgment on the Pleadings, it is undisputed that the *Montiel* plaintiffs originally sought to be a plaintiffs' class and that the *Montiel*  defendants (including the intervening defendants) objected to such status by denying each class allegation in *Montiel's* Third Amended Complaint.  (Answer of *Montiel* defendants,

¶¶37-39;  Answers of intervenor defendants, ¶¶ 37-39).  Thus, the first two elements

required for a de facto class are not met in *Montiel*.

It is also undisputed that nothing in the Montiel record suggests that any party or

the court treated or regarded the case as a class action.   The record is utterly silent as to

class status.  Thus, the third factor for finding a *Montiel* de facto class is not met.

Finally, it is undisputed that the *Montiel* trial court made no statements

whatsoever suggesting that it thought the case was a class action and that it rendered

judgment which contained relief aimed only at the individual *Montiel* plaintiffs.  The

final relief afforded in *Montiel* is clearly limited to the *Montiel* plaintiffs. In its

Memorandum Opinion and Order granting the *Montiel* defendants summary judgment,

stated:

> "[T]hat defendants' motions for summary judgment are due to be and are
> hereby GRANTED with JUDGMENT to be entered in favor of each of the
> defendants and each of the defendant-intervenors and against the plaintiffs
> . . . "

(Order dated July 8, 2002, p. 19).   In a footnote, the court further stated "The plaintiffs in

this case are Gonzalo Fitch Montiel, Sheldon A. Day, John Lang, Camilla Rice. Bobby G.

Humphreys and John Rice."   (Order dated July 8, 2002, p. 19).   Thus, the court did not

deny <u>class</u> relief; it simply denied the six *Montiel* plaintiffs individual relief.

Consequently, the fourth factor for finding de facto class status is not satisfied.   The fact

is that <u>none</u> of the parties in *Montiel* <u>ever</u> treated the class as a class action, and such no

such real, de facto or implied class action existed in which a judgment binding upon

Plaintiffs was entered.

Ignoring those facts and attempting to create a de facto or implied class,

Defendnat-Intervenor Hammett makes the following misstatements of fact: (1) "the

Gustafson plaintiffs had notice of the pending *Montiel v. Davis* action and had ample opportunity to be heard in it." Hammett Brief, p. 10 (Doc. 122); and (2) "the Gustafson plaintiffs were fully aware of the [*Montiel*] class claims and yet did nothing." Hammett Brief, p. 10 (Doc. 122). These statements by Intervenors are simply incorrect. Plaintiffs have all filed Declarations regarding their lack of any substantive knowledge (or, in the case of 14 Plaintiffs, any knowledge) about the *Montiel* litigation. Thus, the Gustafson Plaintiffs cannot share substantial identity with the *Montiel* plaintiffs on grounds of an implied or de facto class, as no such class existed in *Montiel*.

Defendant-Intervenor Hammett's second argument for finding substantial identity between the three sets of plaintiffs is that each action challenged the "same State House and/or Senate redistricting plans, asking this Court and the state court to declare the plans unconstitutional, and asking for the same relief, namely, the adoption of entirely new statewide plans drawn by the court." Hammett Brief, p. 9 (Doc. 122). In support of this contention, Defendant-Intervenor Hammett alleges that: (1) Plaintiffs' Count One – One Person, One Vote is the same cause of action presented in *Montiel v. Davis*; (2) Plaintiffs' Count two – Partisan Gerrymandering is the same cause of action presented in *Montiel v. Davis*; and (3) Plaintiffs' Count Three – Partisan Gerrymandering under the First Amendment is the same cause action presented in or could have been presented in *Montiel v. Davis*. All of these arguments fail.

    ***c. Plaintiffs' Count One Is Not the Same Claim as Montiel's One Person, One Vote Claim***

Defendant-Intervenor Hammett concludes that because the *Montiel* plaintiffs did not prove a violation of the constitutional guarantee of one person, one vote, the

Gustafson Plaintiffs cannot bring that claim.  Defendant-Intervenor Hammett's argument is erroneous.

None of the Gustafson Plaintiffs makes the racially-based claims asserted by the *Montiel* plaintiffs.  While the some of the *Montiel* plaintiffs asserted a one person, one vote claim, that claim was clearly grounded in a racial gerrymandering theory, and the *Montiel* plaintiffs attempted to prove a violation of one person, one vote solely under that theory.  On the other hand, the Gustafson Plaintiffs' claims have no racial component. The claims are (1) a strict one person, one vote claim based on the overpopulation of their Senate and House districts without a legitimate, consistently-applied state interest which justifies the overpopulation, (2) a political gerrymandering claim based on discrimination against the Gustafson Plaintiffs as Republicans and (3) a claim that Republican voters' rights to freedom of speech and association have been violated.

While the *Montiel* court opined at length about the one man, one vote challenge, it only considered the sufficiency of the evidence proffered to establish whether the Alabama Legislature subordinated traditional <u>race-neutral</u> districting principles:

> Plaintiffs have proffered no evidence to refute the **abundant evidence** submitted by the defendants and defendant-intervenors **which establishes that black voters and Democratic voters in Alabama are highly correlated**; that the Legislature utilized recent election returns to ascertain actual voter behavior; and that Acts 2001-727 and 2001-729 **were the product of the Democratic Legislators' partisan political objective to design Senate and House plans that would preserve their respective Democratic majorities.** [Cite omitted] [Emphasis added].

*Montiel v. Davis*, 215 F.Supp.2d at 1283.  The *Montiel* court did not determine whether the Alabama Legislature failed to consistently apply a legitimate state policy which justified the population deviations in the current state legislative redistricting plans. Instead, the *Montiel* court concluded simply that the *Montiel* plaintiffs failed to carry their

burden to make that showing.  In a nutshell, the *Montiel* plaintiffs claimed illegal racial

motivations drove the population deviations but failed to bear their burden of proving that

allegation.

In the case at hand, Plaintiffs have alleged that political considerations drove the

population deviations and that such are not legitimate state interests which might justify

the deviations.  The fact that the plans were drawn for political reasons cannot be

disputed.  The *Montiel* court found "abundant evidence" of a partisan political motive.

Additionally, Defendant-Intervenor Hammett has conceded that point, admitting that "the

partisan motive th[e] *[Montiel*] court found was asserted as a defense to the racial

gerrymandering claim." Hammett Brief, p. 15

### d.    Plaintiffs' Partisan Gerrymandering Claim Was Not Brought in *Montiel*

Defendant-Intervenor Hammett incorrectly asserts that Plaintiffs' partisan

gerrymandering claim is barred because it was brought in *Montiel*.  Defendant-Intervenor

Hammett does not claim that the *Montiel* plaintiffs asserted a partisan gerrymandering

claim but that the *Montiel* court <u>decided</u> that claim, and therefore, it cannot be brought

here.

To support that assertion, Defendant-Intervenor relies on *Equity Resources*

*Management, inc. v. Vinson*, 723 So.2d 634, (Ala. 1998), citing its test to determine

whether identity of causes of action exist in two cases:  (1) whether the claims arise out

of the same evidence, wrongful acts or disputes, or present the same issues; and (2)

whether the claims would be subject to proof by the same evidence.  *Equity Resources*,

723 So.2d at 637.   While the claims in *Montiel* and the claims in this case largely involve

the same wrongful acts of the Legislature, <u>i.e.</u>, constructing malapportioned districts

22

based on political motivations rather than any consistently-applied, legitimate state interest, there is no identity of interest under *Equity Resources*. The Gustafson Plaintiffs intend to produce evidence that the population deviations and resulting districts were not the result of the consistent application of legitimate state interests. On the other hand, the plaintiffs in *Montiel* did not produce any such evidence, but focused their efforts on proving that the plans were the result of racial discrimination.[3] Thus, the claims are not subject to the same proof by the same evidence.

Also probative is the "identity [of] or differences in the forms of the two actions." (Hammett's Brief, p. 13). The difference in the forms of *Montiel's* racial gerrymander claim and Plaintiffs' political gerrymander claim are vast. Plaintiffs allege that the Democratic-controlled Alabama Legislature used classification by political party in an invidious manner or in a way unrelated to any legitimate legislative objective. (Plaintiffs' Amended Complaint, ¶ 133). Plaintiffs also allege that the partisan gerrymanders which are the state legislative redistricting plans and the individual districts contained therein violate Article 4, Section 2 of the United States Constitution, and the Equal Protection Clause of the Fourteenth Amendment and thus 42 U.S.C. § 1983, by fragmenting cohesive communities of interest and political subdivisions between purported districts while no legitimate, consistently applied state policy is supported or furthered. (Plaintiffs' Amended Complaint, ¶ 134).

---

[3]   The *Montiel* court did not determine that the House and Senate plans were constitutional. Instead, the *Montiel* court simply held that the evidence indicating a partisan political objective by the Democratic Legislators to design Senate and House plans that would preserve their respective Democratic majorities, was not evidence that the Legislature "subordinated traditional race-neutral districting principles" to racial considerations – the point the Montiel plaintiffs sought to prove. *Montiel*, 215 F.Supp.2d at 1283.

The *Montiel* plaintiffs' racial gerrymander makes no such allegations.  Instead, the *Montiel* plaintiffs' racial gerrymandering claim was limited to alleging an unconstitutional split of Tuscaloosa County and the City of Tuscaloosa, voting precincts and other communities of interest  by drawing boundaries lines which were predominantly motivated by race.  (Third Amended Complaint ¶ 100).

The *Montiel* plaintiffs also alleged that the House map unconstitutionally split Lee County  and Russell County for purposes of placing black-majority parts of  these counties in House District 83 and place white-majority parts of these counties in white-majority House districts 79 and 80. (*Montiel's* Third Amended Complaint,  ¶¶ 105).

Defendant-Intervenor Hammett alleges that Plaintiffs' Count Two is "nothing but a blatant attempt to litigate th[e] [*Montiel*] holding."  (Hammett's Brief, p. 15).  In fact, Plaintiffs' Count Two is a partisan gerrymander claim, never raised in Montiel but for which *Montiel* provides support, due in large part to the evidence offered by the *Montiel* defendants.  Defendant-Intervenor Hammett's attempt to rewrite history and insert a partisan gerrymandering claim in Montiel should be rejected.

Finally, Defendant-Intervenor Hammett alleges, citing *Growe v. Emison*, 507 U.S. 25, (1993), that the principle espoused therein applies with even greater force where "both federal and state courts have already upheld Alabama's one set of legislative districts against a myriad of claims."  Hammett Brief, p. 17.  What Defendant-Intervenor Hammett fails to mention, however, is that <u>neither</u> court in the cases challenging these maps upheld the constitutionality of the maps.  Instead, both courts simply found that the respective plaintiffs in each case failed to proffer any evidence in support of any stated claim.  *Rice*, 825 So.2d at 165 ("[n]owhere in the complaint do the *Rice* plaintiffs

challenge the degree to which county lines were disregarded." and "[t]he *Rice* plaintiffs did not submit any written opposition to the [defendants'] summary-judgment motion, either before or at the hearing"); and *Montiel*, 215 F.Supp.2d at 1283 ("[p]laintiffs, despite their contentions to the contrary, have failed to proffer evidence, either direct or circumstantial, which establishes to any degree that the Alabama Legislature subordinated traditional race-neutral districting principals . . . . ). Thus, neither *Rice* nor *Montiel* bars the Gustafson Plaintiffs' claims because such claims were <u>not</u> actually litigated in either case by either set of plaintiffs.

### e. Plaintiffs' Count Three Was Not Raised in Montiel

Defendant-Intervenor Hammett alleges that Count Three of Plaintiffs' amended complaint is barred for the same reasons that he contends that Count Two is barred – that the *Montiel* plaintiffs actually brought a political gerrymander claim when they (1) alluded to such a claim in their brief in support of their motion for summary judgment and when (2) the *Montiel* defendants actually proffered evidence indicative of a partisan gerrymander. Plaintiffs disagree. Count Three of their amended complaint states a claim under the First Amendment was never brought nor litigated in *Montiel*. In fact, no partisan gerrymander claim was ever asserted or litigated in *Montiel*.

Defendant-Intervenor Hammett further alleges that even if a partisan gerrymander claim under the First Amendment was not brought in *Montiel*, one could have been and, consequently, the Gustafson Plaintiffs are barred from bring one now. This contention fails because in order to be correct, one must presume privity between the *Montiel* plaintiffs and Plaintiffs that does not exist. The *Montiel* plaintiffs were in no way representing the interests of the Gustafson Plaintiffs.

Plaintiffs are clearly not in substantial identity with either the *Rice* plaintiffs or the *Montiel* plaintiffs and therefore, Intervenors' Motions to Dismiss must be denied.

### 2. Res Judicata is Inapplicable to this Case and Therefore, *Larios v. Cox* is Relevant

Defendant-Intervenor Hammett concludes that res judicata forbids this Court from considering *Larios v. Cox* because that opinion changes the law and cannot be considered by this Court. The argument makes two invalid assumptions. First, inasmuch as res judicata does not bar Plaintiffs' claims in this case, neither does it preclude this Court from relying on decisions announced after *Montiel*. Further, *Larios* is not a change in the law but an affirmation of it.

### B. PLAINTIFFS' COMPLAINT STATES VALID CLAIMS UPON WHICH RELIEF MAY BE GRANTED, AND THEREFORE DEFENDANT-INTERVENOR HAMMETT'S MOTION TO DISMISS SHOULD BE DENIED

In considering a motion to dismiss under Federal Rule of Civil Procedure 12(b)(6), the Court must apply a rigorous test, never once referenced by Defendant-Intervenor Hammett in his motion to dismiss. A complaint "should not be dismissed for failure to state a claim unless it appears beyond doubt that the plaintiff can prove no set of facts in support of his claim which would entitle him to relief." *In re Johannessen,* 76 F.3d 347, 349 (11th Cir.1996) (quoting *Conley v. Gibson,* 355 U.S. 41, 45-46, 78 S.Ct. 99, 2 L.Ed.2d 80 (1957)); *Hishon v. King & Spalding,* 467 U.S. 69, 73, 104 S.Ct. 2229, 2232- 33, 81 L.Ed.2d 59 (1984) (citing *Conley,* 355 U.S. at 45-46, 78 S.Ct. at 101-02, 2 L.Ed.2d 80 (1957)); *Lopez v. First Union Nat'l Bank of Fla.,* 129 F.3d 1186, 1189 (11th Cir.1997); *Linder v. Portocarrero,* 963 F.2d 332 (11th Cir.1992). In considering a motion to dismiss, the Court may look only to the pleadings, Fed. R. Civ. P. 12(b); *GSW,*

*Inc. v. Long County*, 999 F.2d 1508, 1510 (11th Cir. 1993), must "accept all allegations in the complaint as true and construe those allegations in the light most favorable to the plaintiff." *Lopez v. First Union Nat'l Bank of Fla.,* 129 F.3d 1186, 1189 (11th Cir.1997). *See also Cooper v. Pate*, 378 U.S. 546, 546, (1964); *Powell v. United States*, 945 F.2d 374, 375 (11th Cir. 1991).

The purpose of a Rule 12(b)(6) motion is to determine whether the plaintiff's complaint adequately states a claim for relief.  The motion concerns only the complaint's legal sufficiency; the issue is not whether the plaintiff will ultimately prevail, but "whether the claimant is entitled to offer evidence to support the claims." *Little v. City of North Miami,* 805 F.2d 962, 965 (11th Cir.1986) (citation omitted). See 5A Charles A. Wright & Arthur R. Miller, Federal Practice and Procedure § 1356 (2d ed. 1990) (Rule 12(b)(6) is not a procedure for resolving factual questions or for addressing the merits of the case.)  Thus, the "threshold of sufficiency that a complaint must meet to survive a motion to dismiss is exceedingly low," *Quality Foods de Centro Am. v. Latin Am. Agribusiness Dev. Corp.,* 711 F.2d 989, 994 (11th Cir.1983), and consequently, a motion to dismiss under Rule 12(b)(6) is viewed with disfavor and rarely granted.  *Gasper v. La. Stadium & Exposition Dist.*, 577 F.2d 897, 900 (5th Cir. 1978);[4] *Woodham v. Fed. Transit Admin.*, 125 F. Supp. 2d 1106, 1108 (N.D. Ga. 2000).

In his Motion to Dismiss, Defendant-Intervenor Hammett does not argue the sufficiency of the complaint but instead improperly asks the Court to determine whether a claim can ever be stated for partisan gerrymandering and, assuming a claim can be stated,

---

[4]  The United States Court of Appeals for the Eleventh Circuit adopted as binding precedent the decisions of the United States Court of Appeals for the Fifth Circuit handed down prior to September 30, 1981.  *Bonner v. City of Prichard*, 661 F.2d 1206, 1207 (11th Cir. 1981).

to weigh the <u>merits</u> of Plaintiffs' claims.  For that reason alone, Defendant-Intervenor's motion to dismiss under Rule 12(b)(6) should be denied.  Furthermore, as discussed below, Plaintiffs have stated valid claims for relief in their Complaint.

### 1.    Plaintiffs State a Valid One Person, One Vote Claim

Defendant-Intervenor Hammett alleges that Plaintiffs' Amended Complaint fails to state a one-person, one-vote claim because Plaintiffs do not identify an alternative plan that produces smaller population deviations than Alabama's current Senate and House maps, and which better satisfies legitimate redistricting criteria.  There is no such requirement that Plaintiffs identify such a plan in their complaint, and Defendant-Intervenor does not identify such a requirement.  He further argues that the alternative maps with zero deviations introduced by the 2001 Republican legislatures and identified in *Montiel*, with zero deviations, split more counties and precincts than the current maps.  As noted above, Defendant-Intervenor Hammett is arguing the merits of the case, not the sufficiency of the Amended Complaint.

Additionally, Defendant-Intervenor Hammett erroneously contends that that Plaintiffs failed to allege in Count One that the Alabama Legislature ignored *all* of the legitimate redistricting criteria announced it its guidelines and that the population deviations were driven *solely* by a systematic design to overpopulate particular regions of the state and underpopulate others.  Plaintiffs are not required to state the claim exactly as Defendant-Intervenor might.  Nevertheless, the allegations of Paragraphs 107, 113 and 130, among others,  make those points.

As argued in Plaintiffs' Response in Opposition to Defendants' Motion for Judgment on the Pleadings, the Amended Complaint alleges that that 2002 Senate and

House maps create 52 overpopulated House districts and 53 underpopulated districts. It also alleges that each Plaintiff lives in a Senate or House district (and in one instance, both) which is overpopulated and which has a population deviation of more than 4.0%. Plaintiffs claim that the State of Alabama has no legitimate, consistently applied state interest to justify these deviations, and as such, the plans are unconstitutional. Plaintiffs allege the population deviations are designed to maximize the electoral effectiveness of voters in underpopulated regions and to minimize or dissipate the voting strength of voters in over populated regions. Assuming these facts are true and viewing them in a light most favorable to Plaintiffs, Plaintiffs have clearly stated a claim for one person, one vote violation.

Defendant-Intervenor Hammett is grasping at straws when he cites an 1874 case, *Minor v. Happersett*, 88 U.S. 262 (1874), to argue that the Privileges and Immunities Clause in Article IV, § 2 of the Constitution, along with other provisions of the United States Constitution, does not guarantee a fundamental right to vote to United States citizens. Hammett Brief, p. 28. In *Slaughter-House Cases v. Crescent City Live-Stock Landing and Slaughter-House Co.*. 83 U.S. 36, 21 L.Ed. 394 (1872), the United States Supreme Court, in response to a question of "what are the privileges and immunities of the citizens of the several States," quoted another court and stated:

> 'We feel no hesitation in confining these expressions to those privileges and immunities which are *fundamental*; which belong of right to the citizens of all free governments, and which have at all times been enjoyed by citizens of the several States which compose this Union, from the time of their becoming free, independent, and sovereign. What these fundamental principles are, it would be more tedious than difficult to enumerate. They may all, however, be comprehended under the following general heads: protection by the government, with the right to acquire and possess property of every kind, and to pursue and obtain happiness and

safety, subject, nevertheless to such restraints as the government may prescribe for the good of the whole.'

This definition of the privileges and immunities of citizens of the States is adopted in the main by this court in the recent case of *Ward v. The State of Mayland*, [cite omitted]  while it declines to undertake an authoritative definition beyond what was necessary to that decision. The description, when taken to include others not named, but which are of the same general character, embraces nearly every civil right for the establishment and protection of which organized government is instituted. They are, in the language of Judge Washington, those rights which are the [sic] fundamental.

*Slaughter-House*, 83 U.S. at 76.

Consequently, because the right to vote **is** a fundamental right of all citizens, including Alabama citizens, the Privileges and Immunities Clause together with **other provisions of the United States Constitution**, guarantees a fundamental right to vote to United States citizens.  *Kuhn v. Thompson*, 304 F.Supp.2d 1313 (M.D. Ala. 2004).

### 2.   Plaintiffs State a Valid Partisan Gerrymander Claim in Counts II and III

Plaintiffs argued at length the extent to which they successfully stated a partisan gerrymander claim in Plaintiffs' Opposition to Defendants' Motion for Judgment on the Pleadings.    To the extent that Defendant-Intervenor Hammett raises issues not already raised by the State Defendants, Plaintiffs will address those issues only.

In his brief, Defendant-Intervenor Hammett discussed at length the extent to which the Supreme Court Justices, notably in  *Davis v. Bandemer*, 478 U.S. 109 (1986) and *Vieth v. Jubilerer*, have been unable to agree on a definite standard for proving a partisan gerrymander claim.   However, there can be no doubt that the Supreme Court has not made the claim nonjusticiable and that one can be stated.  Plaintiffs have stated that claim.

Defendant-Intervenor is actually requesting that this Court to weigh the merits of Plaintiffs' partisan gerrymandering claim, contending that it will be difficult to prevail on such a claim. As noted above, however, whether Plaintiffs will prevail is not an appropriate inquiry at this juncture. *Little*, 805 F.2d at 965.  Instead, this Court's inquiry is limited to whether the allegations at issue constitute "a short and plain statement of the claim showing that the pleader is entitled to relief."  <u>See</u> Fed. R. Civ. P. 8(a)(2)); Fed. R. Civ. P. 12(b); *GSW, Inc*., 999 F.2d at 1510.

In order to state a partisan gerrymandering claim, a plaintiff must allege "intentional discrimination against an identifiable political group and an actual discriminatory effect on that group." *Bandemer*, 478 U.S. at 127.[5]  Nothing in *Vieth* changed that fact.  In *Bandemer,* the Supreme Court concluded that "unconstitutional discrimination occurs . . . when the electoral system is arranged in a manner that will consistently degrade a voter's or a group of voters' influence on the political process as a whole." *Bandemer*, 478 U.S. 132-33.  In this case, Plaintiffs assert that the current state legislative redistricting plans were designed and intended to discriminate and in fact do discriminate against Republicans on a statewide basis and Republican voters in particular districts.

The gross partisan gerrymandering of the current plans violates democratic values by conceding to the legislature the power of self-selection, and has effectively shut out

---

[5]  Although a majority of the *Bandemer* and *Vieth* Courts agreed that political gerrymandering claims are justiciable, the Courts did not reach a consensus on the issue of what a plaintiff must allege, and ultimately prove, in order to prevail on a claim of vote dilution in the context of political gerrymandering.  The plurality opinion in *Davis* provides the "narrowest grounds" for decision, and is cited herein.

the Plaintiffs from influencing the political process.  The allegations set forth in Plaintiffs' Complaint state a valid partisan gerrymandering claim, and should not be dismissed.  See *Republican Party of North Carolina v. Martin*, 980 F.2d 943, 958 (4th Cir. 1992)(holding that the complaint of political gerrymandering in the election of North Carolina Superior Court judges presented a justiciable question, and stated a claim upon which relief could be granted under the Fourteenth Amendment).

Defendant-Intervenor Hammett, like the State Defendants, asks this Court to do what Justice Kennedy in *Vieth* would not do: foreclose all possibility of judicial relief even in the midst of a partisan gerrymander.  The Amended Complaint states a claim for partisan gerrymander.   Consequently, Defendant-Intervenor's motion to dismiss Plaintiffs' partisan gerrymander claim, as asserted in Counts II and III must be denied.

## C.    LACHES IS INAPPLICABLE TO THIS CASE

Defendant-Intervenor Hammett cites several newspaper articles and concludesfrom them that "[i]t is apparent that the commencement of this action was delayed purposefully to ensure the Legislature would have as little opportunity as possible to correct any constitution violations plaintiffs are asking this Court to find." (Hammett's Brief, pp. 56-57).  Defendant-Intervenor Hammett's gigantic leap from quotes in newspapers of Alabama residents stating they would like to see a lawsuit filed, to Plaintiffs purposefully delaying commencement of the action to preclude the Legislature from acting, is unfounded and presumes that the Legislature would have acted if the case had been filed in 2004.  In fact, there is every indication that the Legislature would have done exactly what it did after *Rice v. Smith* and *Montiel v. Davis* were filed – absolutely nothing.

Defendant-Intervenor cites four cases, each of which is distinguishable from the present case.   Each case requires a showing of prejudice to Defendants, of which Defendant-Intervenor has not and cannot show.  He merely alleges that by not filing this action in 2004, the Alabama Legislature had no opportunity to correct the constitutional violations in their maps.  The Alabama Legislature had ample opportunity to correct the constitutional violations in its maps during the previous litigation over these maps, and elected not to do so.  The filing of Plaintiffs' action was not unreasonably delayed, and neither Defendant-Intervenor  nor the State Defendants are prejudiced.

More importantly, laches suggest that it is too late in the cycle to remedy a constitutional violation that may exist.  The plans at issue were drawn in 2001, to be used in the 2002, 2006 and 2010 elections for the Alabama state legislature.  Only one of those elections has taken place.  If the plans are unconstitutional, they can be corrected while 2/3 of the cycle remains.

## **CONCLUSION**

For the foregoing reasons, Defendant-Intervenor Hammett's Motion to

Dismiss should be denied.

This 18th day of October, 2005.

Respectfully submitted,

/s/ Mark G. Montiel
Mark G. Montiel
Bar No. MONT9485
Alabama Bar No. ASB-9485-T68M
Attorney for Plaintiffs
MARK G. MONTIEL, P.C.
6752 Taylor Circle
Montgomery, Alabama  36117
Telephone:  334.396.3331
Facsimile:  334.396.4465
email:  mgmontielpc@aol.com

/s/ Frank B. Strickland
Frank B. Strickland
Bar No. STRIF0921
Georgia Bar No. 687600

/s/ Anne W. Lewis
Anne W. Lewis
Bar No. LEWIA7226
Georgia Bar No. 737490
Attorneys for Plaintiffs

**STRICKLAND BROCKINGTON
     LEWIS LLP**
Midtown Proscenium Suite 2000
1170 Peachtree Street, NE
Atlanta, Georgia  30309
Telephone: 678.347.2200
Facsimile:  678. 347.2210
email:  fbs@sbllaw.net
            awl@sbllaw.net

34

IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF ALABAMA
SOUTHERN DIVISION

| | | |
|---|---|---|
| LIONEL GUSTAFSON et al., | § | |
| | § | |
| Plaintiffs, | § | |
| | § | |
| v. | § | CIVIL ACTION NO. |
| | § | 1:05-cv-00352-CG-L |
| ADRIAN JOHNS, et al., | § | |
| | § | |
| Defendants. | § | |
| | § | |

CERTIFICATE OF SERVICE

I HEREBY CERTIFY that I have this day electronically filed the within and foregoing **PLAINTIFFS' RESPONSE IN OPPOSITION TO DEFENDANT-INTERVENOR HAMMETT'S MOTION TO DISMISS** with the Clerk of Court using the CM/ECF system, which will send notification of such filing to all parties to this matter via electronic notification:

Charles Brinsfield Campbell
Office of the Attorney General
State of Alabama
11 South Union Street
Montgomery, AL 36130
 (email): ccampbell@ago.state.al.us

John J. Park, Jr.
Office of the Attorney General
State of Alabama
11 South Union Street
Montgomery, AL 36130
(email): jpark@ago.state.al.us

Edward Still
2112 11th Avenue South, Suite 201
Birmingham, Alabama 35205
(email): still@votelaw.com

James U. Blacksher
P.O. Box 636
Birmingham, Alabama 35201
(email): jblacksher@ns.sympatico.ca

Robert D. Segall
Shannon L. Holliday
Copeland, Franco, Screws & Gill, P.A.
444 South Perry Street
P.O. Box 347
Montgomery, Alabama 36101-0347
(email): holliday@copelandfranco.com
(email): segall@copelandfranco.com

Larry T. Menefee
407 S. McDonough Street
Montgomery, Alabama 36104
(email): lmenfee@knology.net

Algert S. Agricola, Jr.
Slaten & O'Connor, P.C.
Winter Loeb Building
105 Tallapoosa Street, Suite 101
Montgomery, AL 36104
email:aagricola@slatenlaw.com

35

This 18[h] day of October, 2005.

/s/ Anne W. Lewis
Anne W. Lewis

**STRICKLAND BROCKINGTON LEWIS LLP**
Midtown Proscenium, Suite 2000
1170 Peachtree Street, NE
Atlanta, Georgia 30309
(t): 678.347.2200
(f): 678.347.2210

This _____ day of October, 2005.

/s/ Anne W. Lewis
Anne W. Lewis

**STRICKLAND BROCKINGTON LEWIS LLP**
Midtown Proscenium, Suite 2000
1170 Peachtree Street, NE
Atlanta, Georgia 30309
(t): 678.347.2200
(f): 678.347.2210