IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF ALABAMA
SOUTHERN DIVISION

LIONEL GUSTAFSON et al.,                    )
                                             )
              Plaintiffs,                    )
                                             )
V.                                           )  CIVIL ACTION NO.
                                             )  1:05-cv-00352-CG-L
ADRIAN JOHNS, et al.,                        )  (Three-judge court)
                                             )
              Defendants,                    )
                                             )
SETH HAMMETT, LOWELL BARRON and              )
HANK SANDERS,                                )
                                             )
              Defendants-Intervenors.        )

**DEFENDANT-INTERVENOR HAMMETT'S REPLY TO
PLAINTIFFS' OPPOSITION TO HAMMETT'S MOTION TO DISMISS
AND PLAINTIFFS' SUPPLEMENTAL BRIEF IN OPPOSITION TO
THE ATTORNEY GENERAL'S MOTION FOR JUDGMENT ON THE PLEADINGS**

Defendant-intervenor Seth Hammett, through undersigned counsel, pursuant to this

Court's orders of September 30 and October 4, 2005 (Docs. 119 and 125), replies as follows to

plaintiffs' response (Doc. 136) in opposition to Hammett's motion to dismiss (Doc. 121) and to

plaintiffs' supplemental brief (Doc. 134) in opposition to the Attorney General's motion for

judgment on the pleadings (Doc. 84).

This reply will try to clarify the following principles of law governing the preclusion of

the Gustafson plaintiffs' claims under the doctrine of virtual representation, which have been

confused or misstated in plaintiffs' responses:

(1) The Gustafson plaintiffs were not parties as class members in *Montiel v.*

*Davis*, 215 F.Supp.2d 1279 (S.D. Ala. 2002) (3-judge court), because *Montie*l was never certified

as a class action, either explicitly or by implication.  Instead, the Gustafson claims are precluded because, as non-parties to *Montiel*, they were virtually represented by the Montiel plaintiffs.

(2) Virtual representation is one way of establishing privity between parties and non-parties.  It does not require a showing that the non-parties or their sponsors participated in or controlled the prior litigation.  Such participation and control is a separate way to establish privity.

(3) A public law case is not a case in which the issues affect all citizens equally.  Rather, a public law case is one in which the outcome necessarily affects not only the parties but a portion of the public who are similarly situated.  Application of virtual representation principles is less likely to comport with due process where the plaintiffs' rights are particular to themselves personally, especially property rights, and is more likely to satisfy due process requirements where the plaintiffs rights, even fundamental rights, are not particular to the plaintiffs but are shared in common with other members of the public.

(4) It is the *interests* that parties and non-parties share, not their *legal theories*, that determine whether the claims in a subsequent action are precluded by principles of virtual representation.

(5) The factor of publicity surrounding the first public law action is relevant to showing whether non-parties filing a subsequent action passed up an opportunity to participate in the first action, either because they knew about the litigation or should have known about it, but it is not a necessary condition of virtual representation.

In addition, this reply will show that plaintiffs' responses fail to rebut the arguments of the Attorney General and Hammett that the amended complaint's conclusory one-person, one-

vote allegations fail to state a claim upon which relief can be granted, and that plaintiffs' political gerrymander theories fail to articulate a manageable judicial standard that has not already been rejected by the Supreme Court.

## I.   PLAINTIFFS' CLAIMS ARE PRECLUDED BY PRINCIPLES OF VIRTUAL REPRESENTATION.

### 1.   Plaintiffs Claims Are Precluded Because of Non-party Privity, Not Because *Montiel v. Davis* Was an Implied Class Action.

The Gustafson plaintiffs' responses devote much of their argument to opposing any suggestion that *Montiel v. Davis* was an implied class action.  Doc. 134 at 7-10; Doc. 136 at 19-20.  Defendant-intervenor Hammett agrees that *Montiel v. Davis* was not a class action, either by certification or by implication.  Doc. 133 at 11-13.  Rather, contrary to plaintiffs' assertion, Doc. 136 at 19-20, Hammett's contentions that the Gustafson plaintiffs were aware of, or should have been aware of, the pendency of *Montiel v. Davis* and the other lawsuits challenging the House and Senate redistricting statutes and had ample opportunity to participate in those lawsuits are based on principles of privity between parties to the earlier actions and non-parties like Gustafson.

### 2.   Privity Can Be Established By the Doctrine of Virtual Representation, Which Does Not Require Actual Participation, Awareness and Control By the Non-parties.

Plaintiffs concede that preclusion of their claims in this action should be governed by "normal privity analysis," whether they are claims that effectively were raised or claims that could have been raised in the prior redistricting lawsuits.  Doc. 134 at 10 (*quoting Tice v. American Airlines, Inc.*, 162 F.3d 966, 972-73 (7th Cir. 1998)); Doc. 136 at 25.  They do not

contest the fact that the doctrine of virtual representation is one of the ways privity can be established.  And they concede that non-parties in privity with the first parties are precluded from reasserting not only those claims actually litigated in the prior lawsuit, but claims which could have been raised as well, such as the Gustafson First Amendment claim.  Doc. 136 at 25.

But plaintiffs try to avoid application of virtual representation principles here by confusing them with the "control" type of privity.  *EEOC v. Pemco Aeroplex, Inc.*, 383 F.3d 1280, 1286 (11th Cir.2004), *cert. denied*, 2005 WL 699798, 73 USLW 3595 (U.S. Oct. 03, 2005). See generally the discussion in Hammett's supplemental brief, Doc. 133 at 4.  Virtual representation only requires adequate representation of mutual interests.  It is not necessary that the non-parties participated in the prior litigation, controlled it, consented to it, or even were aware of it.

*Tice*, the Seventh Circuit case plaintiffs primarily rely on, applies the narrower set of privity principles to a situation where virtual representation usually would be inappropriate: a private law action involving personal property rights.  *Tice* was an employment discrimination suit against a non-government employer brought by employees who could not have been represented by unsuccessful job applicants in a prior action under the ADEA, which even contains a statutory requirement of written consent.  162 F.3d at 973-74.  In this respect, *Tice* is akin to *Pemco*, another private law case, where the Eleventh Circuit refused to apply virtual representation.

**3.      Virtual Representation Is Most Likely To Satisfy Due Process In a Public Law Civil Action.**

Adequate representation of common interests is most likely to occur in the public law

4

context.  See Doc. 133 at 2-11.  Plaintiffs try to sidestep this important distinction by misstating the definition of a public law action, arguing that it may not implicate fundamental rights and that its claims must affect all citizens equally.  Doc. 134 at 6.  Obviously, most public law suits will assert a violation of fundamental rights, whether it be the First, Thirteenth and Fourteenth Amendment rights at stake in *NAACP v. Hunt*, 891 F.2d 1555 (11th Cir. 1990), the religious freedom rights advanced in *Jaffree v. Wallace*, 837 F.2d 1461 (11th Cir. 1988), or the alleged violation of voting rights non-parties sought to relitigate in the redistricting cases like this one.  *Robertson v. Bartels*, 149 F.Supp.2d 443 (D. N.J. 2001) (3-judge court), *aff'd summarily*, 534 U.S. 1110 (2002); *Thompson v. Smith*, 52 F.Supp.2d 1364 (M.D. Ala. 1999) (3-judge court); *Tyus v. Schoemehl*, 93 F.3d 449 (8th Cir. 1996), *cert. denied*, 520 U.S. 1166 (1997).  Virtual representation principles nevertheless were invoked to preclude the ability of non-parties to get second bites at the apple in all these cases.

And plaintiffs' assertion that a public law action is limited to situations in which the alleged violations impact all citizens equally is not only wrong, it is incoherent.  It is impossible even to imagine any legal or constitutional claim that would not adversely impact one segment of the public more than another.  Otherwise, the plaintiffs would have no cause to complain.  Contrary to plaintiffs' contention, for example, Doc. 134 at 4, in *NAACP v. Hunt* the plaintiffs alleged that flying the Confederate flag was an unconstitutional insult to African Americans in particular.  What gives actions like that one and the instant one a public law character is the assertion of claims that allegedly injure one group or class of citizens in a way that impacts each member of that group or class the same.  Thus, in a public law suit, if the individual plaintiff wins, all members of the group or class necessarily win, and if she loses, so do her compatriots.

However, where, as in *Richards v. Jefferson County*, 517 U.S. 793 (1996), the relief sought even in a public law action impacts the property interests of each affected member of the group individually, due process concerns may make application of preclusion by virtual representation inappropriate.

### 4. Virtual Representation Requires Commonality of Interests, Not Commonality of Legal Theories.

Plaintiffs try to avoid preclusion by pointing to the ways the Gustafson plaintiffs have refashioned the legal theories asserted by the Montiel plaintiffs.  They say the Montiel plaintiffs were challenging the "systematic overpopulation of majority-white districts" as racial discrimination, Doc. 134 at 13-14, while the Gustafson plaintiffs contend that the same systematic overpopulation of mostly suburban districts and underpopulation of inner-city and Black Belt districts constitute partisan political discrimination.  Doc. 136 at 4-5, 22 (contending that "political considerations drove the population deviations").

However, as we pointed out in Hammett's supplemental brief, Doc. 133 at 13, "[i]t is the identity of *interests* that determines the due process question, not ... the identity of *issues.*" *Robertson v. Bartels*, 149 F.Supp.2d at 450 (*quoting Moldovan v. Great Atlantic & Pacific Tea Co.,* 790 F.2d 894, 899 (3d Cir.1986)) (emphasis in original).  Whether the plaintiffs residing in districts with minor deviations over the ideal population claim their votes are diluted because they are white or because they are Republicans, they share the identical interests in challenging some allegedly arbitrary or invidious scheme to produce the same deviations and in obtaining the same relief.  This would be true even if the Montiel plaintiffs had not been proxies for Republican interests, and even if this Court had not found that the partisan motive of preserving

Democratic majorities in both houses of the Legislature predominated over racial considerations. *Montiel v. Davis*, 215 F.Supp.2d at 1283.  The fact that the Montiel plaintiffs were pursuing the publicly announced strategy of certain Republican legislators (one of whom, Rep. Humphryes, was a named plaintiff) and the fact that the Gustafson plaintiffs expressly allege they are pursuing the interests of the Republican Party simply reinforce the commonality of interests that necessarily would have existed by the correlation of racial and partisan factors.  Because the Montiel plaintiffs had the *incentive* to protect the same interests, the Gustafson plaintiffs were adequately represented in *Montiel v. Davis*.  See Hammett's supplemental brief, Doc. 133 at 19-20.

### 5.   Virtual Representation Does Not Require Actual Notice of the Prior Action, Although Publicity Provided the Gustafson Plaintiffs Notice and an Opportunity To Be Heard in *Montiel v. Davis*.

Where adequate representation of the non-parties' interests warrants application of the virtual representation doctrine to establish privity, the due process concerns about personal notice of the prior action and an opportunity to be heard need not come into play.  *Tyus*, 93 F.3d at 455 (virtual representation falls within the scope of the exception noted in *Richards* to the general rule of *in personam* notice").  However, as we pointed out in Hammett's supplemental brief, Doc. 133 at 17-19, the extensive publicity surrounding the post-2000 redistricting process and the subsequent lawsuits provided constructive notice to all members of the public whose interests genuinely were involved.

As we pointed out, Doc. 133 at 18, none of the Gustafson plaintiffs' affidavits states that he or she was unaware of the redistricting process and resulting litigation in general or of all the

publicity surrounding those events.  The plaintiffs' responses to this Court's questions declined

to provide any information about plaintiffs' knowledge of publicity and other evidence of

plaintiffs' awareness.  Doc. 134 at 18-19.  Plaintiffs volunteered the information in their

affidavits "without intending to transform Defendants' Motion into a motion for summary

judgment. . . ."  Doc. 134 at 1.  But this Court can take judicial notice of the publicity without

converting the motion for judgment on the pleadings and the motion to dismiss into a motion for

summary judgment, pursuant to Rules 12(b) and 12(c), Fed. R. Civ. P.

Hammett has asked this Court to take judicial notice of the publicity surrounding the

redistricting process and the events preceding and leading up to the instant action.  Doc. 133 at

13-14 n.10 and Attachment A.  Even though this publicity involves matters outside the pleadings,

this Circuit has ruled that a district court may consider such information without converting a

motion to dismiss into a Rule 56 proceeding:

> Our Rule 12(b)(6) decisions have adopted the "incorporation by reference"
> doctrine, under which a document attached to a motion to dismiss may be
> considered by the court without converting the motion into one for summary
> judgment only if the attached document is: (1) central to the plaintiff's claim;  and
> (2) undisputed.  "Undisputed" in this context means that the authenticity of the
> document is not challenged.  Given that the operative rule language is identical
> and that the provisions serve the same purpose, we believe that the Rule 12(b)(6)
> incorporation by reference doctrine should apply in Rule 12(c) cases as well.

*Horsley v. Feldt*, 304 F.3d 1125,1134 (11th Cir. 2002) (citations omitted).  If this Court declines

to take judicial notice of the publicity proffered by Hammett, and if the Gustafson plaintiffs

dispute its authenticity, it will be necessary – to the extent this Court determines that publicity is

"central to the plaintiff's claim," *id*. – to convert the pending motions into motions for summary

judgment.  Hammett is prepared to produce copies of the complete online articles excerpted in

8

Attachment A to his supplemental brief and many more articles of the same sort. Plaintiffs could be given the opportunity to present evidence that the articles are not authentic or were somehow not accessible to the plaintiffs.[1]

> **6.  Plaintiffs Cannot Avoid the "Same Transaction" Test, Which Shows That the Same Causes of Action Were Raised in *Montiel v. Davis*.**

Whether one refers to the Alabama cases cited in Hammett's brief supporting his motion to dismiss, Doc. 122 at 13, or to Eleventh Circuit precedent, the "same transaction" test must be used to determine if the Gustafson plaintiffs' claims present the same causes of action raised in *Montiel v. Davis*.

> [C]laims are part of the same cause of action for res judicata purposes when they arise out of the same transaction or series of transactions. "In determining whether the causes of action are the same, a court must compare the substance of the actions, not their form. It is now said, in general, that if a case arises out of the same nucleus of operative fact, or is based upon the same factual predicate, as a former action, that the two cases are really the same 'claim' or 'cause of action' for purposes of res judicata."

*In re Piper Aircraft Corp.*, 244 F.3d 1289, 1296-97 (11th Cir.), *cert. denied sub nom. TDY Industries, Inc. v. Kaiser Aerospace and Electronic s Corp.*, 534 U.S. 827 (2001) (*quoting Ragsdale v. Rubbermaid, Inc.,* 193 F.3d 1235, 1239 (11th Cir.1999) (internal citation and quotation marks omitted)) (other citations omitted).

Plaintiffs concede, as they must, that "the claims in *Montiel* and the claims in this case involve the same wrongful acts of the Legislature, i.e., constructing malapportioned districts

---

[1] The summary judgment proceedings would not require the opening of discovery. Limited discovery would be necessary only if this Court concluded that virtual representation does not justify dismissal of this action and that the parties should be given the opportunity to demonstrate privity between the Montiel and Gustafson plaintiffs through evidence of mutual sponsorship or control by partisan actors or organizations.

based on political motivations rather than any consistently-applied, legitimate state interest. . . ." Doc. 136 at 22-23.  Their arguments that, nevertheless, the Gustafson plaintiffs' claims do not involve the same transactions are (1) that "there is no identity of interests" between the Gustafson and Montiel plaintiffs and (2) that the Montiel plaintiffs focused on evidence of racial discrimination not partisan political discrimination.  *Id.* at 23.

The first argument fails for the reasons discussed above demonstrating that the two sets of plaintiffs share the same interests and differ only in their legal theories.  The second argument fails on the face of the amended Gustafson complaint, which alleges that a constitutional violation is evidenced by the systematic overpopulation of the same districts statewide that the Montiel plaintiffs focused their allegations and evidence on.  Even the political gerrymander claims in counts two and three are based entirely on allegedly unconstitutional minor population deviations, not on the manipulation of any identified district boundaries.  Count two includes a conclusory allegation that the plans produce "wanton fragmentation of cultural, ethnic, geographic economic [sic] and political communities," Doc. 9 at ¶ 135, but there are no specific facts alleged in addition to population deviations.  The only specific complaint about each of the districts in which the Gustafson plaintiffs resides is that it is overpopulated.

Plaintiffs also argue that this Court's summary judgment in *Montiel v. Davis*, based on Montiel's failure to produce evidence that the House and Senate plans were based on arbitrary or discriminatory considerations and did not rely on legitimate redistricting criteria, does not amount to a judicial determination that the plans are constitutional.  It was a judgment on the merits of the Montiel plaintiffs' claims, not a dismissal for lack of jurisdiction or standing.  This is all that is required under principles of claim preclusion.

Moreover, plaintiffs acknowledge that "The *Montiel* court found 'abundant evidence' of a partisan political motive."  Doc. 136 at 22.  But, notwithstanding that explicit finding of fact, this Court also found there was no evidence "that the apportionment process had a taint of arbitrariness or discrimination."  215 F.Supp.2d at 1286 (internal quotation marks and citation omitted).  Even if the Gustafson plaintiffs were not in privity with the Montiel plaintiffs and thus bound by the prior judgment, this Court would be bound by principles of *stare decisis* to reject the Gustafson claims of partisan discrimination on the merits, based on *Montiel*'s holding that the Legislature's political motives did not violate the Constitution.[2]

## II.     PLAINTIFFS' AMENDED COMPLAINT FAILS TO STATE A CLAIM UPON WHICH RELIEF CAN BE GRANTED.

### 1.     Count One Fails To State a Claim, Because in Redistricting Litigation Plaintiffs May Not Rest on Conclusory Notice Pleadings.

Plaintiffs pin all their hopes of surviving a Rule 12(b)(6) motion on the sufficiency of their conclusory notice pleadings.  Doc. 136 at 26 (*citing Conley v. Gibson*, 355 U.S. 41 (1957)).  But, even in the ordinary case, "[t]he liberal standard of notice pleading still requires a plaintiff to provide the defendant with fair notice of the factual grounds on which the complaint rests." *Jackson v. BellSouth Communications*, 372 F.3d 1250, 1271 (11th Cir. 2004).  This is not the ordinary case.  The need of supporting factual allegations is especially important in redistricting

---

[2]The passage from *South Central Bell*, 526 U.S. 160, 167-68 (1999), quoted by plaintiffs, Doc. 136 at 12, makes a similar point:

> Nor could these facts have led the later plaintiffs to expect to be precluded, as a matter of res judicata, by the earlier judgment itself, even though they may well have expected that the rule of law announced in *Reynolds Metals* would bind them in the same way that a decided case binds every citizen. (emphasis added).

litigation.

Federal-court review of districting legislation represents a serious intrusion on the most vital of local functions.   It is well settled that "reapportionment is primarily the duty and responsibility of the State." *Chapman v. Meier*, 420 U.S. 1, 27 (1975); *see, e.g., Voinovich v. Quilter*, 507 U.S. 146, 156-157 (1993); *Growe v. Emison*, 507 U.S. 25, 34 (1993).  Electoral districting is a most difficult subject for legislatures, and so the States must have discretion to exercise the political judgment necessary to balance competing interests.  Although race-based decisionmaking is inherently suspect, *e.g., Adarand [Constructors, Inc. v. Peña*], 515 U.S.[ 200, 218 [(1995)] (*citing [Regents of Univ. of Calif. v.] Bakke*, 438 U.S. [265,] 291 [(1978)] (opinion of Powell, J.)), **until a claimant makes a showing sufficient to support that allegation the good faith of a state legislature must be presumed**, *see id.* at 318-319 (opinion of Powell, J.).  . . .  To make this showing, a plaintiff must prove that the legislature subordinated traditional race-neutral districting principles, including but not limited to compactness, contiguity, and respect for political subdivisions or communities defined by actual shared interests, to racial considerations.  Where these or other race-neutral considerations are the basis for redistricting legislation, and are not subordinated to race, a State can "defeat a claim that a district has been gerrymandered on racial lines." *Shaw, supra*, 515 U.S., at 647.  These principles inform the plaintiff's burden of proof at trial.  **Of course, courts must also recognize these principles, and the intrusive potential of judicial intervention into the legislative realm, when assessing under the Federal Rules of Civil Procedure the adequacy of a plaintiff's showing at the various stages of litigation and determining whether to permit discovery or trial to proceed**.  See, *e.g.,* Fed.Rules Civ.Proc. 12(b) and (e), **26(b)(2), 56**; *see also Celotex Corp. v. Catrett*, 477 U.S. 317, 327 (1986).

*Miller v. Johnson*, 515 U.S. 900, 915-17 (1995)(bold emphases added).  Following the Supreme

Court's instructions, this Court granted summary judgment dismissing the amended complaint in

*Montiel v. Davis* because the Montiel plaintiffs failed to carry their burden of adducing facts, not

appearing on the face of the redistricting plans, showing that the Legislature failed to make a

good faith effort to minimize population deviations and to employ legitimate redistricting

criteria.

The Gustafson plaintiffs' amended complaint alleges no facts to support their conclusory

claim of being able to meet the evidentiary burden set out in *Montiel v. Davis*.  To the contrary,

they allege that the House and Senate plans are "irrational on their face," Doc. 9 at ¶ 118,

precisely the claim rejected in *Montiel v. Davis*.  They allege that better plans "can be drawn" and

"were available to the Alabama Legislature during the 2001 redistricting process," but they

identify no such plans.  Their brief opposing Hammett's motion to dismiss boldly argues "[t]here

is no such requirement that Plaintiffs identify such a plan in their complaint. . . ."  Doc. 136 at 28.

It points only to population deviations appearing on the face of the plans to support their claim

that "the population deviations were driven *solely* by a systematic design to overpopulate

particular regions of the state and underpopulate others."  *Id*. at 28-29 (emphasis in original).  It

says plaintiffs "intend to produce evidence" that the Legislature did not follow its own

guidelines.  *Id*. at 23.  At a minimum, *Montiel v. Davis* held that Act 2001-727 and Act 2001-729

are not unconstitutionally arbitrary or discriminatory on their face.  The Gustafson amended

complaint alleges no additional facts to support a one-person, one-vote claim, and thus it fails to

state a claim upon which relief can be granted.[3]

---

[3] Plaintiffs fail to recognize why their Privileges or Immunities Clause theory is misplaced.  Doc. 136 at 29-30.  This Clause famously does not create any federal right to vote. *Minor v. Happersett*, 88 U.S. 162 (1874).  The passage plaintiffs quote from the *Slaughter-House Cases*, 83 U.S. (16 Wall.) 36, 76 (1872), refers to fundamental rights the *states* have created, and which, the Court in the *Slaughter-House Cases* regrettably held, were not modified by adoption of the Fourteenth Amendment.  There is recent scholarly interest in rehabilitating the Privileges or Immunities Clauses in Article IV and Amendment XIV, a movement plaintiffs may wish to join.  *E.g.,* Jeffrey Rosen, *Translating the Privileges or Immunities Clause*, 66 GEO. WASH. L. REV. 1241 (1998) ("'Everyone,' we're told, now agrees that the Supreme Court took a wrong turn in the *Slaughter-House Cases* in 1873, when a narrow majority read the Privileges or Immunities Clause of the Fourteenth Amendment out of the Constitution by construing it into irrelevancy.").

2.     **Counts Two and Three Fail To State a Claim, Because They Articulate No Manageable Judicial Standard for Detecting Unconstitutional Partisan Gerrymandering.**

Plaintiffs deny they are required to plead a manageable standard of unconstitutional partisan gerrymandering.  Doc. 136 at 3, 30-31.  It is enough, they argue, that the Supreme Court has left the door open for the possibility that a partisan gerrymandering claim may be justiciable.  *Id*. at 30.  They are wrong.  *Vieth v. Jubelirer*, 541 U.S. 267 (2004), affirmed Rule 12(b)(6) dismissal of partisan gerrymandering claims because the plaintiffs failed to articulate a manageable standard, notwithstanding the refusal of five justices to hold conclusively that such claims are nonjusticiable.  541 U.S. at 272-73.

All of the standards in the Gustafson plaintiffs' amended complaint, summarized in their brief, Doc. 136 at 5-6, were rejected by a majority of justices in *Vieth*.  See Hammett's brief supporting his motion to dismiss, Doc. 122 at 28-54.  At bottom, the Gustafson plaintiffs rely on the standard set out in the plurality opinion in *Davis v. Bandemer*, 478 U.S. 109 (1986), which they contend was left undisturbed by *Vieth*.[4]  Doc. 136 at 31 and n.5.  But this is incorrect.  The *Bandemer* plurality opinion's standard was rejected by the four members of the *Vieth* plurality, 541 U.S. at 282, by Justice Kennedy, *id*. at 308 (Kennedy, J., concurring), and even by at least two of the dissenters.  *Id*. at 355 (Souter, J., joined by Ginsburg, J., dissenting) ("In drafting the complaint for this case, appellants' counsel naturally proceeded on the assumption that they had to satisfy the *Davis v. Bandemer* plurality, or some revision in light of *Shaw*[ *v. Reno*, 509 U.S. 630 (1993)]*,* but not the prima facie case I have in mind.").

_____

[4] Plaintiffs concede that *Larios v. Cox*, 300 F.Supp.2d 1320 (N.D. Ga.), *aff'd summarily*, 124 S.Ct. 2806 (2004), did not change the law governing their claims.  Doc. 136 at 26.

14

To proceed in this action, the Gustafson plaintiffs must plead a judicial standard for detecting unconstitutional partisan gerrymandering that has not already been rejected as unmanageable by the Supreme Court.  They have failed to do so.[5]  Their claims should be dismissed.

## CONCLUSION

The redistricting plans legislatively enacted by Acts 2001-727 and 2001-729 are widely acknowledged to be good plans that fairly reconciled the myriad of competing political interests at stake while observing to the extent practicable all the neutral, legitimate districting guidelines the Legislature adopted.  The State of Alabama has nothing to hide or to apologize about.  But the State may not be forced repeatedly to justify these sensitive legislative decisions in federal court, and attempts to plead claims challenging the plans must satisfy the demanding requirements the Supreme Court has established.  The Gustafson plaintiffs' claims are precluded by prior litigation, and they have failed to plead sufficient facts and manageable standards to survive a Rule 12(b)(6) motion to dismiss.

---

[5] Even had plaintiffs proposed a new standard, they would be asking this Court to become the first ever to conclude that it was sufficient and that a manageable standard actually exists.

Respectfully submitted this 27th day of October, 2005,

Edward Still
Edward Still Bar No. ASB-4786-I 47W
2112 11th Avenue South
Suite 201
Birmingham, AL 35205
        205-320-2882
        fax toll free 877-264-5513
E-mail: still@votelaw.com

s/James U. Blacksher
James U. Blacksher Bar No. ASB-2381-S82J
P.O. Box 636
Birmingham AL 35201
        205-591-7238
        Fax: 866-845-4395
E-mail: jblacksher@ns.sympatico.ca

Attorneys for defendant-intervenor Hammett

IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF ALABAMA
SOUTHERN DIVISION

LIONEL GUSTAFSON et al.,                    )
                                            )
            Plaintiffs,                     )
                                            )
V.                                          )  CIVIL ACTION NO.
                                            )  1:05-cv-00352-CG-L
ADRIAN JOHNS, et al.,                       )
                                            )
            Defendants,                     )


CERTIFICATE OF SERVICE

    I hereby certify that on October 27, 2005, I electronically filed the foregoing with the Clerk of the Court using the CM/ECF system, which will send notification of such filing to the following:

Mark Montiel                          Frank B. Strickland
6752 Taylor Circle                    1170 Peachtree Street
Montgomery, AL 36117                  Suite 2000
Email: mgmontielpc@aol.com            Atlanta, GA 30309
                                      Email: FBS@sbllaw.net

Anne Ware Lewis
1170 Peachtree Street                 Troy R. King
Suite 2000                            John J. Park, Jr.
Atlanta, GA 30309                     Charles B. Campbell
Email: awl@sbllaw.net                 Attorney General's Office
                                      Alabama State House
LARRY T. MENEFEE                      11 South Union Street
407 S. McDonough Street               Montgomery, AL 36130-0152
Montgomery, AL 36104                  Email: jpark@ago.state.al.us
Email: lmenefee@knology.net                    ccampbell@ago.state.al.us


Jeffrey M. Sewell
Asst. County Attorney                 ROBERT D. SEGALL
280 Jefferson County Courthouse       SHANNON L. HOLLIDAY
716 Richard Arrington, Jr., Blvd. North   444 South Perry Street
Birmingham, AL. 35203                 P. O. Box 347

Email: sewellj@jccal.org

Algert S. Agricola, Jr.
Winter Loeb Building
105 Tallaposa Street, Suite 101
Montgomery, AL 36104
Email: aagricola@slatenlaw.com

Montgomery, AL 36101-0347
Email: segall@copelandfranco.com
        holliday@copelandfranco.com

Respectfully submitted,

s/James U. Blacksher
James U. Blacksher Bar No. ASB-2381-S82J
P.O. Box 636
Birmingham AL 35201
    205-591-7238
    Fax: 866-845-4395
E-mail: jblacksher@ns.sympatico.ca

18