IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF ALABAMA
SOUTHERN DIVISION

| | | |
|---|---|---|
| LIONEL GUSTAFSON, et al. | ) | |
| | ) | |
| Plaintiffs, | ) | |
| | ) | |
| v. | ) | CIVIL ACTION NO. 1:05-cv-00352-CG-L |
| | ) | |
| ADRIAN JOHNS, etc., et al. | ) | THREE-JUDGE COURT |
| | ) | |
| Defendants, | ) | |
| | ) | |
| LOWELL BARRON and HENRY | ) | |
| ("HANK") SANDERS, | ) | |
| | ) | |
| Movants, | ) | |
| | ) | |
| SETH HAMMETT, | ) | |
| | ) | |
| Movant, | ) | |
| | ) | |
| BOB RILEY, etc., | ) | |
| | ) | |
| Movant. | ) | |

SUPPLEMENTAL REPLY TO PLAINTIFFS' SUPPLEMENTAL BRIEF IN
OPPOSITION TO DEFENDANTS' MOTION FOR JUDGMENT ON THE PLEADINGS

Pursuant to this Court's Order of September 30, 2005 (No. 119), Nancy Worley, in her

official capacity as Secretary of State of Alabama, a defendant in this action, for herself and on

behalf of the 67 Probate Judges who are also named as defendants in their official capacities,

submits this Supplemental Reply to the Gustafson Plaintiffs' Supplemental Brief in Opposition

to her Motion for Judgment on the Pleadings.  (No. 134)  For the reasons stated in Secretary of

State Worley's Motion, her Memorandum in Support, and her Reply (Nos. 84, 85, 107), and this

Supplemental Reply, this Court should overrule the Gustafson Plaintiffs' objection and grant

Secretary of State Worley's Motion.

In this Brief, Secretary of State Worley will first show that the United States Supreme Court has recognized a class of cases in which a prior judgment against certain parties may be invoked to bar a subsequent action by nonparties to that case. Then, she will address the doctrine of virtual representation, showing that it is appropriate to invoke that doctrine to bar the claims of the Gustafson Plaintiffs. She will next address the implied class action doctrine. Finally, she will point to other factors that favor the preclusion of the Gustafson Plaintiffs' claims under a more generalized due process analysis.

Before doing so, Secretary of State Worley wishes to draw this Court's attention to the procedural posture of this case. The present briefing is in response to a motion for judgment on the pleadings and motions to dismiss. Ordinarily, those motions are due to be resolved on the basis of the pleadings, but, as Secretary of State Worley and the legislative parties have shown, this Court may also consider matters of public record or other matters as to which judicial notice could be taken without transforming the motions into summary judgment motions. The same is not true of the Declarations that have been filed by the Gustafson Plaintiffs. The facts they assert are true are not capable of judicial notice. While the Gustafson Plaintiffs disclaim any intent to turn the motions into summary judgment motions, they also contend that the motions raise factual issues which cannot be resolved on the pleadings. *See* No. 134 at 1-2, 18-19.

This Court should not let the Gustafson Plaintiffs have it both ways. Before allowing this case to proceed generally, this Court might consider allowing Secretary of State Worley and the Intervenor-Defendant legislators to conduct tailored discovery for a limited period. The discovery could be tailored to the issues pertinent to the virtual representation inquiry and would allow the defendants an opportunity to produce facts which are within the Gustafson Plaintiffs' knowledge but are not disclosed in the Declarations. Indeed, the answers to some of the questions that this Court posed could only have been answered by the Gustafson Plaintiffs, but

they have chosen to duck them. *See* No. 134 at 18 (Regarding supporters in common).  In any event, Secretary of State Worley believes that this issue should be resolved before this Court allows the parties to proceed with discovery on the merits.

### A.  General Considerations

At its most general, the question presented by this Court's questions and the parties' briefing is whether it would offend due process to bind some or all of the Gustafson Plaintiffs with the judgment against the Montiel Plaintiffs.  While ordinarily, "[a] judgment or decree among parties to a lawsuit resolves issues as among them, but . . . does not conclude the rights of strangers to those proceedings," *Richards v. Jefferson County*, 517 U.S. 793, 798, 116 S. Ct. 1761, 1766 (1996) (quoting *Martin v. Wilks*, 490 U.S. 755, 762, 109 S. Ct. 2180, 2184 (1989)), the rule is not inflexible.  The "[m]ost notabl[e]" exception is for privity, a term that "is now used to describe various relationships between litigants that would not have come within the traditional definition of that term." *Richards*, 517 U.S. at 798, 116 S. Ct. at 1766; *cf. Southwest Airlines Co. v. Texas Intern. Airlines, Inc.*, 546 F.2d 84, 95 (5th Cir. 1977) (Privity "represents a legal conclusion that the relationship between the one who is a party on the record and the non-party is sufficiently close to afford application of the principle of preclusion.").  For example, "in certain limited circumstances, a person, [who], although not a party, has his interests adequately represented by someone with the same interest who is a party" will be bound. *Richards*, 517 U.S. at 798, 116 S. Ct. at 1766 (quoting *Martin v. Wilks*, 490 U.S. at 762, n.2, 109 S. Ct. at 2184, n.2).  In essence, "a prior proceeding, to have binding effect on absent parties, would at least have to be 'so devised and applied as to insure that those present are of the same class as those absent and that the litigation is so conducted as to insure the full and fair consideration of the common issue.'" *Id.* 517 U.S. at 801, 116 S. Ct. at 1767 (quoting *Hansberry v. Lee*, 311 U.S. 32, 43, 61 S. Ct. 115, 119 (1940)).

In *Richards*, the United States Supreme Court held that the resolution of a previous challenge to a county's occupational tax did not preclude a subsequent challenge by different plaintiffs where the two sets of plaintiffs were "best described as mere strangers to one another." *Id.*, 517 U.S. at 802, 116 S. Ct. at 1768 (interior quotation omitted).  The Court also rejected the contention that the character of the action, a challenge to a county's tax, changed the analysis.  In doing so, the Court distinguished between two types of taxpayer lawsuits, noting that each type should be analyzed differently.  With respect to the first category, "cases in which the taxpayer is using that status to complain about an alleged misuse of public funds . . . or about other public action that has only an indirect impact upon his interests," the Court "assume[d]" that "the States have wide latitude . . . to limit the number of judicial proceedings that may be entertained."  *Id.*, 517 U.S. at 803, 116 S. Ct. at 1768 (internal citations omitted).  The claims at issue in *Richards*, which involved a challenge to "a State's attempt to levy personal funds," *id.,* did not fit into that category.

Subsequently, in *South Central Bell Telephone Co. v. Alabama,* 526 U.S. 160, 119 S. Ct. 1180 (1999), the Court returned to this theme in the course of rejecting another attempt to invoke res judicata to bar a challenge to the application of Alabama's franchise tax to foreign corporations.   The Court explained that, in the absence of a "special representational relationship" between the two groups of plaintiffs, 526 U.S. at 168, 119 S. Ct. at 1185, the

> second set of plaintiffs could not have been led to expect to be precluded, as a matter of res judicata, by the earlier judgment itself, even though they may well have expected that the rule of law announced in [the earlier case] would bind them in the same way that a decided case binds every citizen.

*Id.*  As in *Richards*, the taxpayers' challenges, which came from different taxpayers and involved different tax years, were not the kind of claims that could be precluded:  "Neither [case] is a

class action, and no one claims that there is 'privity' or some other special relationship between the two sets of plaintiffs." 526 U.S. at 167-68, 119 S. Ct. at 1185.

In sum, while *Richards* and *South Central Bell* each reject the invocation of res judicata to bar subsequent challenges to the application of tax statutes, both cases also recognize a class of cases in which the States have "wide latitude . . . to limit the number of judicial proceedings that may be entertained." *Richards*, 517 U.S. at 803, 116 S. Ct. at 1768. That class of cases generally includes those cases in which due process would not be offended by invoking a prior judgment to bar a subsequent action. More specifically, that class of cases include those in which, among others, the doctrine of virtual representation applies, an implied class action is present, or other indicia support the invocation of res judicata.

**B. The Gustafson Plaintiffs' claims are barred by the judgment in *Montiel v. Davis.***

**1. Virtual Representation**

In *Aerojet-Gen. Corp. v. Askew,* 511 F.2d 710 (5th Cir. 1975)[1], the Fifth Circuit Court of Appeals noted, "[A] person may be bound by a judgment even though not a party if one of the parties to the suit is so closely aligned with his interests as to be his virtual representative." *Id.* at 717. When considering whether virtual representation is present, "several factors are relevant, including 'participation in the first litigation, apparent consent to be bound, apparent tactical maneuvering, [and] close relationships between parties and nonparties." *Wallace v. Jaffree*, 837 F.2d 1461, 1467 (11th Cir. 1988) (quoting 18 Wright & Miller, *Federal Practice & Procedure*, sec 4447 at 494-99). Those are not the "only" factors to be considered, however, as the Gustafson Plaintiffs would have it. No. 134, at 2.[2] Rather, the courts should also consider "the

---

[1] In *Bonner v. City of Prichard*, 661 F.2d 1206 (11th Cir. 1981) (*en banc*), the Eleventh Circuit Court of Appeals adopted the decisions of the former Fifth Circuit rendered prior to October 1, 1981 as binding precedent.
[2] Any reliance by the Gustafson Plaintiffs on *EEOC v. Pemco Aeroplex, Inc.*, 383 F.3d 1280 (11th Cir. 2004), is misplaced. In *Pemco*, the Eleventh Circuit recognized that the values which militate against preclusion of a nonparty are particularly strong when the nonparty "is a governmental agency reposed with independent statutory

adequacy of the prior representation, where advocacy is viewed in terms of incentive to litigate.''
*See, e.g., Robertson v. Bartels,* 148 F. Supp. 2d 443, 450 (D.N.J. 2001) (three-judge court), *aff'd,*
534 U.S. 1110, 122 S. Ct. 914 (2002).  In addition, the courts should consider whether a public
or private law issue is raised.  *Id.*

The courts have invoked preclusion through virtual representation or otherwise in several
cases involving redistricting.  *See Tyus v. Schoemehl*, 93 F.3d 449 (8th Cir. 1996); *Robertson v.
Bartels; Thompson v. Smith*, 52 F. Supp. 2d 1364 (M.D. Ala. 1999) (three-judge court) *Dillard v.
Crenshaw* County, 640 F. Supp. 1347 (M.D. ala. 1986); *see also Niere v. St. Louis* County, 305
F.3d 834 (8th Cir. 2002) (challenge to disincorporation of small municipality).  Moreover, as
Secretary of State Worley has shown, the Supreme Court's summary affirmance of the decision
in *Robertson v.* Bartels includes an affirmance of that court's holding on virtual representation.
See No. 107 at 8-10 and Exhibit 9.  In each instance, the court held that prior, losing litigation
brought by one party operated to bar the pursuit of some or all of the claims of nonparties.  These
decisions, and the Gustafson Plaintiffs' failure to point to any redistricting decision to the
contrary, should guide this Court's analysis.

More particularly, in *Tyus v. Schoemehl* and *Robertson v. Bartels*, the court concluded
that the redistricting claims before it were public, not private, law issues.  Those courts pointed
to the potentially limitless number of plaintiffs and the desirability of deterring fence-sitting.  *See
Tyus*, 93 F.3d at 456; *Robertson*, 148 F. Supp. 2d at 450.  As the Eighth Circuit recognized,
"Concerns of judicial economy and cost to defendants, while present in every suit, are
particularly important in this context.''  *Tyus*, 93 F.3d at 456.

In addition, in *Dillard v. Crenshaw County*, the court held that the unsuccessful pursuit of
a constitutional claim of intentional discrimination by one group of plaintiffs barred a subsequent

---

power to enforce the law and having independent interests not shared by a private party." *Id.* at 1285; *see also id.* at
1290-91.

intentional discrimination claim under Section 2 of the Voting Rights Act by a different group of plaintiffs. The court reasoned, "Since the plaintiffs in both suits challenged the same election system in the same county, it would appear that they arise out of the identical operative nucleus of fact." 640 F. Supp. at 1365. The court declined to hold that a claim under the results prong of Section 2 was barred because such a claim was not available at the time of the first judgment. In contrast, the 1982 amendment to the Voting Rights Act, which created the results prong, had "no practical effect" on the intent prong. *Id.* Significantly, the court held that the intentional discrimination claims were barred even though the fundamental rights of a large number of voters were at stake. *Id.* at 1366-67.

The Gustafson Plaintiffs' arguments against the application of virtual representation not only fail to take these cases into account, they lack merit as well. As noted above, *Tyus v. Schoemehl* and *Robertson v. Bartels* reject their contention that their claims involve private law issues. With respect to their contention that different claims are involved, Secretary of State Worley reiterates that res judicata bars not only the claims that were made in the prior case but also the claims that could have been made. She also reiterates that a political gerrymandering claim was available to the Montiel Plaintiffs. Likewise, to the extent that the Montiel Plaintiffs' standing to make a one-person one-vote claim turned on their living in an overpopulated district, they spoke for the Gustafson Plaintiffs. Finally, she notes that the same model is used by both the Montiel and Gustafson Plaintiffs. As Judge Black explained in her concurring opinion, the Montiel Plaintiffs' "one man, one vote" claim was "novel" and had the effect of "evad[ing] potential standing problems." *Montiel v. Davis*, 215 F. Supp. 2d at 1290 and (n.4 (Black, J., concurring). In the same way, the Gustafson Plaintiffs use a claim of political gerrymandering to attack the *de minimus* population deviations. The only thing that has changed is the allegedly unconstitutional motive.

## 2. Implied Class Action

With respect to the issue of implied class action, Secretary of State Worley notes that there are facts that cut both ways. Even if the elements of the implied class action doctrine are not satisfied, however, the facts supporting the application of that doctrine should be considered in connection with the virtual representation doctrine and with the general due process analysis.

In their Third Amended Complaint, the Montiel Plaintiffs sought the certification of a plaintiff class as well as several subclasses. More particularly,

- Plaintiff Gonzalo Montiel, who lived in an overpopulated Senate district and an under populated House district, alleged that he was under represented and brought his claim "on behalf of himself and all other citizens of the State of Alabama similarly situated," No. 85, Exhibit 8 at page 6, ¶ 5;

- Plaintiffs Day, Humphryes, and John Rice brought suit on behalf of themselves, all similarly situated citizens who lived in their districts, and "other citizens who are assigned" to State Senate or House districts "that violate the constitutional requirements of one-person, one-vote. *Id.,* at page 6, ¶ 6, page 7-8, ¶ 9, and page 8, ¶ 10; and

- Plaintiff Lang and Camilla Rice brought suit on behalf of themselves and "all other citizens of the State of Alabama similarly situated who reside in these districts." *Id.*, page 7, ¶¶ 7,8.

They also alleged that they would "fairly and adequately protect the interests of the classes and subclasses." *Id.*, at pages 16-19, ¶ 37. In so doing, they assumed a measure of responsibility to the putative class members without regard to whether the proposed classes and subclasses were certified.

On the other hand, no plaintiff class or subclass was certified.  In addition, the defendants opposed class certification.  Even if these considerations compel the rejection of the implied class action doctrine, this Court should consider the degree to which the Montiel Plaintiffs sought to represent other citizens in assessing the relationship between the two sets of plaintiffs.

This Court should also reject the Gustafson Plaintiffs suggestion that the Defendants in *Montiel v. Davis* engaged in tactical maneuvering. No. 134 at 22-23.  The Defendants opposed the certification of a plaintiff class and subclasses for good legal reasons.  Chief among them is the standing requirement that the plaintiff in a racial gerrymandering case live in the district that he contends is unconstitutionally gerrymandered.  *See Sinkfield v. Kelley*, 531 U.S. 281,121 S. Ct. 446 (2000); *United States v. Hays*, 515 U.S. 737, 115 S. Ct. 2431 (1995).  In addition, the Montiel Plaintiffs could not purport to represent all of the voters of an overpopulated district because a significant number of voters could be counted on to vote the other way.  In short, it would have been inappropriate for the Defendants' lawyers to behave like defense counsel in a consumer class action, as Gustafson Plaintiffs suggest they should have done.

### 3.  Other Considerations

In seeking to distance themselves from the judgment in *Montiel v. Davis,* the Gustafson Plaintiffs claim that they had little or no notice that those proceedings were ongoing.  Those assertions should be given little weight for several reasons.

First, as Speaker Hammett has shown, they make this assertion against the backdrop of substantial press coverage of the redistricting effort and the litigation in *Montiel v. Davis. See generally* No. 133 at Attachment A.  That press coverage contains references to themes addressed by the Gustafson Plaintiffs.  For example, in an article published in *The Birmingham News* on June 29, 2001, Tim Parker, a Republican member of the Alabama House of

Representatives is said to have asserted, "We already expected it to be partisan. You can't take the politics out of politics. But I think what's happened is, in the lust to protect incumbent Democrats, I think they've gone a little overboard and shortchanged some counties and some cities." *Id.* at 9. Similarly, in an Associated Press story on June 30, 2001, the writer stated, "Republicans contend the Democrat-designed districts pack more people into fast-growing Republican-oriented districts while putting fewer people into some slower-growing Democratic-oriented districts." *Id.* at 11; *see also id.* at 14, 17. Furthermore, the press coverage points to lawsuits and statements by one of the Gustafson Plaintiffs' lawyers, Mark Montiel. *See, e.g., id.* at 17-18, 19, 22.

Montiel's participation is important for another reason. As Secretary of State Worley has noted, redistricting litigation is frequently and substantially lawyer-driven. No. 107 at 10. In such a context, the repeated, common presence of an attorney should be given greater weight than it might be given in other contexts. *Compare South Central Bell*, 526 U.S. at 168, 119 S. Ct. at 1185 (Fact that "one of the Reynolds Metals lawyers also represented the Bell Plaintiffs" not sufficient to create special representational relationship). This is particularly true here given that Montiel is the common denominator in *Rice v. English,* 732 So. 2d 998 (Ala. 1999), *Thompson v. Smith, Sinkfield v. Kelley*, and *Montiel v. Davis.*[3] "Realistically, functionally, practically," the challenges are as much his as they are the challenge of any of the plaintiffs. *Culver v. City of Milwaukee*, 277 F.3d 908, 913 (7th Cir. 2002) ("Experience teaches that it is counsel for the class representative and not the named parties, who direct and manage these actions.")

---

[3] In addition, Montiel represents the plaintiff in *Owens v. Jordan, et al.* Case No. Cv-02.1512-CP, in the Circuit Court of Montgomery County, a state-law based challenge to the Senate redistricting plan. *See* Exhibit 10. That case remains pending.

Montiel's awareness and the awareness of those Republican representatives quoted in the press coverage submitted by Speaker Hammett, outweigh the claims of ignorance by the Gustafson Plaintiffs. Rewarding such claims of ignorance hardly gives citizens an incentive to pay attention to political issues. Indeed, such ignorance could well have been rational in that the Gustafson Plaintiffs might have thought that they had more important things to pay attention to.

CONCLUSION

This Court should overrule the Gustafson Plaintiffs' objection and grant Secretary of State Worley's Motion for Judgment on the Pleadings. The judgment against the Montiel Plaintiffs should be binding on the Gustafson Plaintiffs because any claims that the Gustafson Plaintiffs make could have been made in the prior case, the two sets of plaintiffs share an interest in attacking the State's legislative districting plans, redistricting is an issue of public law as to which the supply of plaintiffs is limitless, the State is entitled to peace, and the Gustafson Plaintiffs' defense of the adequacy of their pleading of political gerrymandering claims is inadequate.

Respectfully submitted,

**TROY KING**
**ATTORNEY GENERAL**
**BY:**

**s/ John J. Park, Jr.**
John J. Park, Jr.
Bar Number: PARKJ8382
Assistant Attorney General
*Attorney for Defendants*

OFFICE OF THE ATTORNEY GENERAL
STATE OF ALABAMA
11 South Union Street
Montgomery, Alabama  36130-0152
Telephone:  (334) 242-7300
Fax:  (334) 353-8440
E-mail:  jpark@ago.state.al.us


**s/ Charles B. Campbell**

Charles B. Campbell
Bar Number:  CAMPC6423
Assistant Attorney General
*Attorney for Defendants*
OFFICE OF THE ATTORNEY GENERAL
STATE OF ALABAMA
11 South Union Street
Montgomery, Alabama  36130-0152
Telephone:  (334) 242-7300
Fax:  (334) 353-8440
E-mail:  ccampbell@ago.state.al.us

12

## <u>CERTIFICATE OF SERVICE</u>

I HEREBY CERTIFY that on the 28th day of October, 2005, I electronically filed the foregoing with the Clerk of the Court using the CM/ECF system which will send notification of such filing to the following:

Mark G. Montiel, Esq.
6752 Taylor Circle
Montgomery, AL 36117

Frank B. Strickland, Esq.
Anne W. Lewis, Esq.
Strickland Brockington Lewis, LLP
Midtown Proscenium, Suite 2000
1170 Peachtree Street, NE
Atlanta, GA 30309

Algert S. Agricola, Esq.
Slaten & O'Connor
Winter Loeb Building
105 Tallapoosa Street, Suite 101
Montgomery, AL 36104

Robert D. Segall, Esq.
Shannon L. Holliday, Esq.
Copeland, Franco, Screws & Gill
P.O. Box 347
Montgomery, AL  36101-0347

Larry T. Menefee, Esq.
407 South McDonough Street
Montgomery, AL  36104

James U. Blackshear, Esq.
710 Title Building
300 North Richard Arrington Blvd.
Birmingham, AL  35203-3352

Edward Still
2112 11th Avenue South, Suite 201
Birmingham, AL  35205

**s/ John J. Park, Jr.**

John J. Park, Jr.
Bar Number: PARKJ8382
Assistant Attorney General
*Attorney for Defendants*
OFFICE OF THE ATTORNEY GENERAL
STATE OF ALABAMA
11 South Union Street
Montgomery, Alabama  36130-0152
Telephone:  (334) 242-7300
Fax:  (334) 353-8440
E-mail:  jpark@ago.state.al.us